## ZWEIFEL vs. THE STATE.

PLEADING: *Statutory action.—Complaint under the bastardy act.*

1. A complaint under the bastardy act (ch. 37, R. S.) is good if it conforms to the provisions of the statutes; and it need not state that the prosecutrix is a resident of the county where the action is brought, nor at what time and place the child was begotten.

2. Nor need such complaint aver that the complainant and defendant were not married at the time of the alleged conception, nor at the commencement of the action; that being sufficiently implied in the statutory averment that the child, "if born alive, will be a bastard."

3. In such an action, evidence tending, alone or in connection with other evidence, to show that some other man (though not identified) was alone with the prosecutrix at unusual and suspicious times and places, should be suffered to go to the jury; and they should be allowed to pass upon the weight of all proper evidence, without interference in that respect by the court.

ERROR to the Circuit Court for *Milwaukee* County.

*Jas. G. Jenkins,* for the plaintiff in error.
*The Attorney-General,* for the state.

COLE, J.   The first question to be considered in this case is as to the sufficiency of the complaint.   It is claimed on the part of the plaintiff in error, that the complaint upon which he was arrested and held to answer shows no jurisdiction of the magistrate or the court in which he was tried.

The complaint was under the bastardy act, made by Hulda Crossett to a justice of the peace of Milwaukee county, stating, in substance, that she was pregnant with a child, which, if born alive, would be a bastard, and which child was begotten upon her body by the plaintiff in error, who was the father thereof.

The first objection taken to the complaint is, that it does not show, and it is not stated therein, that the complaining female was, or ever had been, a resident of the state of Wisconsin, and of the county of Milwaukee, in which the proceeding was instituted.

By the first section of chap. 37, R. S., it is enacted, that, " on complaint being made to any justice of the peace, by any female who shall be delivered of a bastard child, or who shall be pregnant with a child which, if born alive, may be a bastard, accusing any person of being the father of such child, the justice shall take such complaint, in writing, under the oath of such female, and shall thereupon issue his warrant," etc.

It is apparent from this language, that the legislature did not deem it material that the complaint should state that the complaining female was a resident of the county where the proceeding was instituted; nor have we held that it was essential to the jurisdiction of the justice or court that it must appear that she was a resident of such county. *Duffies v. State,* 7 Wis. 672; *Owen v. State,* 12 id. 559. See also, *The State v. Allen,* 4 Blackf. 270; *Beeman v.*

*State*, 5 id. 165; *The State v. Gray*, 8 id. 274; *State v. Demoss*, 4 Ind. 189. The case of *Owen v. State* would seem to be decisive upon this point. There the proceeding was instituted in the county of Milwaukee, and the court was requested to instruct the jury that if they found that the complaining witness was a resident of Jefferson county before the birth of the child, and had resided in that county since the birth of the child, and still resided there, the action could not be maintained. The court refused so to instruct the jury, and this court affirmed the ruling of the court below. If it is essential to the sufficiency of the complaint that it should show that the complaining female is a resident of the county where the prosecution is had, it would seem to follow that the fact of residence should be proven on the trial. But no such fact was established in the *Owen Case*, and the court did not deem it material to the question of jurisdiction that the complaining witness should be a resident of the county where the prosecution was had. In the case before us, it clearly appears that Hulda was and had been a resident of Milwaukee county for many years. That county was the one which would be burdened with the expense of supporting the bastard child, or rather the town in which she had her legal settlement would incur that expense; and we are very clear that the objection that the complaint is bad because it does not show that Hulda was a resident of the county, must be overruled.

It is further claimed that the complaint is defective because it does not state the time when and place where the child was begotten upon the body of the female prosecuting. It is said that the defendant has a right to be informed of the approximate time and place, so as to enable him to meet the charge. But we think this objection to the complaint is untenable. It is true, this proceeding is *quasi* criminal in its char-

acter; but we do not understand that all the strictness of criminal pleadings must necessarily be applied to the statements contained in the complaint. If the complaint conforms to the provisions of the statute, it is sufficient. And this remark fully-disposes of another objection which was taken to the complaint, namely, that it should state that the complaining female and defendant were not married at the time the child was alleged to have been begotten, or were not married at the time the complaint was made. But the complaint surely negatives all presumption that the parties were married at the time of conception or since, by the statement that the child, "if born alive, will be a bastard." We must therefore overrule the objections to the complaint, and hold it sufficient under our statute.

But a number of exceptions were taken to the rulings of the court on the trial, which we think must be sustained. And first, in respect to the testimony of the witness Charles Moss. This witness was proceeding to testify about an occurrence which he witnessed in the night time, in the spring of 1869, between the prosecutrix and some man. The witness could not tell who the man was who performed in this transaction, though he thought the female was the complainant. The circuit court interrupted the witness with the remark, that if he could not say who the individuals were, he could not testify as to what he saw, and must proceed no further. We think the defendant was entitled to have all this testimony before the jury. It was the province of the jury to determine what weight the evidence should have, and what it tended to prove. It might, perhaps, when connected with other evidence, have an important bearing upon the question at issue. At all events, it was clearly competent testimony, and the court should have permitted the witness to tell all he knew about the transaction. If the witness could not tell who the man was,

and the defendant could not identify the parties, the jury would doubtless have given the evidence its proper weight.

It is claimed that the court erroneously charged the jury as to the effect of the evidence about the paternity of the child. The court, in substance, instructed the jury upon that point, that the only doubt which existed arose from the conflict of testimony between the defendant and the complaining witness. There was other evidence in the case, however, which had more or less bearing upon that question, and which the jury might properly consider in arriving at a verdict. The jury surely should not have been confined to a consideration of the testimony of the prosecutrix and defendant alone, to the exclusion of the other evidence.

The remarks made by the circuit court, upon the instructions given at the request of the defendant, are objected to. The criticism made by the counsel for the defendant upon these remarks is certainly not without foundation. We are not certain that we fully comprehend the meaning of the circuit court in the observations made upon the first instruction. By that instruction the court was asked to charge the jury that the prosecution must establish to their satisfaction that the defendant was the father of the child, and that such fact must be established beyond any reasonable doubt, and that if they entertained any reasonable doubt upon the evidence as to who was the father of the child, they must acquit the defendant. In commenting upon or explaining this instruction, the court said, that it was true or correct as a legal proposition, but that the " doubt must not be a myth; it must not be any mere wavering doubt; it must be a doubt arising upon some substantial fact in the case, which creates the doubt, and that clearly must be a reasonable doubt, based upon the evidence in the case." Now, we presume that by this language the circuit

court merely intended to tell the jury that a "reasonable doubt" was not a mere possible or imaginary doubt, arising upon the testimony, regardless of the degree of proof offered, because everything in human affairs, depending on moral evidence, is open to some possible doubt ; and that the prosecution was not required to establish the fact that the defendant was the father of the child by proof which should be absolutely overwhelming and conclusive, and which would amount to an absolute certainty of that fact. If this was really what the court meant in the remarks above quoted, we can see no objection to them. But the remarks made upon the second instruction were calculated to very much weaken, if not to destroy the effect of that instruction upon the minds of the jury. The instruction was, that the jury had the right to take into consideration the evidence introduced by the defendant showing that the complainant was alone with some man other than the defendant at unreasonable and improper hours of the night, and away from home and at unusual and improper places, and to give it proper weight if they believed such testimony to be true, in determining the question of the paternity of the child. After giving this instruction, the court said : "That as a general principle this would be correct, but in actions of this character, and as the testimony is in the case, such testimony can have but little weight, with the facts and positive evidence of sexual connection and criminal intercourse of the defendant with the complaining witness."

It is very obvious that the court in these comments clearly overreached upon the office of the jury, whose duty it was to weigh this evidence with the other testimony, and determine what facts were established by it. The court, in effect, told the jury that this kind of evidence was entitled to little or no consideration in their inquiries as to who was the father of the child. The jury might have been improperly influenced by

the expression of such views by the court as to the force and effect of the evidence. And the same error was committed in one or two other parts of the charge, where the court very clearly expresses its opinion upon the weight of evidence, and almost tells the jury what inferences and conclusions they are to deduce from it. The questions of fact were not fairly submitted to the jury, and the defendant is entitled to a new trial upon that ground.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial awarded.