Strickler v. Grass.

## D. R. STRICKLER V. NEVIA GRASS.

[FILED SEPTEMBER 16, 1891.]

1. **Bastardy:** EXAMINATION OF COMPLAINANT: WAIVER. The provisions of statute that upon a complaint of bastardy by an unmarried woman to a justice of the peace that she is pregnant, or has been delivered of a child, charging a putative father with the offense, the defendant shall be arrested, and brought to answer, requires the justice to examine the complainant under oath touching her complaint, which examination is to be reduced to writing, are provisions for the protection of defendants, and may be waived without prejudice to their defense.

2. ———— : EVIDENCE. In an action of bastardy upon an answer of not guilty by the defendant, witnesses may be examined on the part of the plaintiff as to the intimate relations apparently existing between the accused at and about the time of the claimed conception.

3. ———— : ———— : PREPONDERANCE OF, SUFFICIENT. The proceeding under the bastardy act is essentially a civil one and a preponderance of evidence is sufficient. *Altschuler v. Algaza,* 16 Neb., 631.

4. ———— : THE EVIDENCE examined, and *held*, to sustain the verdict.

ERROR to the district court for York county. Tried below before NORVAL, J.

*George B. France,* for plaintiff in error, cited: *Altschuler v. Algaza,* 16 Neb., 631; *Masters v. Marsh,* 19 Id., 458; *Spurgeon v. Clemmons,* 6 Id., 309; Winfield, Words and Phrases, 513; *Wiggins v. Chicago,* 68 Ill., 372–375; *Barker v. State,* 47 Wis., 111; *Van Tassel v. State,* 18 N. W. Rep. [Wis.], 328; *Daegling v. State,* 14 Id., 593; 2 Greenl., Ev., sec. 152; *McCoy v. People,* 65 Ia., 439; *Hanawalt v. State,* 24 N. W. Rep. [Wis.], 489; *Young v. Makepeace,* 103 Mass., 50.

*Sedgwick & Power,* contra, cited: *Cleveland Pa. Co. v. Banks,* 15 Neb., 23.

Cobb, Ch. J.

This action was based upon a complaint for bastardy, by the defendant in error against the plaintiff in error, tried before a jury in the district court of York county, with verdict and judgment for the plaintiff, defendant in error.

There are several errors presented in this court, the first one in the order of presentation in the brief of the plaintiff in error, though not in issue at the trial nor presented in the motion for a new trial, is of considerable practical importance and will be first considered. It appears from the certificate of the justice who issued the warrant upon which the plaintiff in error was arrested, that upon being brought before him the plaintiff in error waived an examination and entered into a recognizance, with security for his appearance at the next term of the district court. He now, in the brief of counsel, seeks to raise the point that the district court had not the jurisdiction to try him upon the charge of bastardy for the reason that there was no examination under oath of the complainant, the defendant in error, upon her charge made against the plaintiff in error before the justice of the peace, as a basis for the jurisdiction of the district court.

Section 1 of chapter 37 of the Compiled Statutes, which chapter is devoted to the subject of illegitimate children, must doubtless be treated as in a sense mandatory; certainly so to the extent that there is no discretion resting in a justice of the peace to waive, fail, or refuse to carry out any of its provisions, so far as the same are for the protection of the county, the mother of the illegitimate child, or the child itself. These three, in a sense, constitute one party to the suit. The defendant, who is accused of being the father of the illegitimate child, is entitled to all of the rights necessary to his defense. Among these is the right to have the woman, who accuses him of being the father of

her child, placed under oath and subjected to a cross-examination and examined and such examination reduced to writing on every point deemed necessary or proper to elucidate the fact of its paternity.   But this is a right the exercise of which is sometimes unpleasant to the parties most interested, and is one which the putative father is not obliged to insist upon and have exercised to the delectation and amusement of the crowd. If he is not the father, or believes himself not to be, he may either insist upon all his rights, including that of having the salacious tale told and recorded, and thereby render it necessary that the date of the birth of the child (in cases where the child is not yet born) shall to a reasonable degree tally in point of time with the alleged date of conception, and, moreover, subject the plaintiff's character, habits, and associations, covering a given period of time, to such searching investigation and criticism as he may think advisable and necessary, or as tending to shift the charge of an illegitimate paternity from his shoulders and fasten it upon others.

On the other hand, whether he believes himself to be the father or not, he may, without admission or acquiescence in the charge, waive the right to have the plaintiff subjected to an examination in the justice's court.   Indeed, there is scarcely one, if any, right possessed by a party in a lawsuit which he cannot, if he chooses, waive and not insist upon the exercise of.   I know of no reason, nor has any been suggested, why this right should be taken out of that general, if not universal rule.

In the case at bar, the plaintiff was first examined as to her intercourse with the man whom she charged with the paternity of her child in the district court; the statements of fact, of time, and of circumstances were there recorded and made the basis of attack by the plaintiff in error, the same as would have been her statements, if originally made before the justice of the peace and afterwards repeated in the district court, with the single exception that

the defendant might, in the latter case, have had some slight advantage in the discrepancies between the statement, as originally made before the justice of the peace, and as repeated in the district court. This advantage, never important in any case, was waived in this, and that is the entire significance of this point of error.

The second error presented and argued in the brief is that of alleged errors of law occurring at the trial and duly excepted to. This is based upon the overruling of several separate objections of defendant to as many questions put to defendant in error by her counsel, tending to bring out from her evidence of the intimate relations existing between plaintiff and defendant at and about the time of the alleged intercourse between them. Three of these questions excepted to I will here quote:

Q. Well, how intimately did you keep company with him, the defendant, from that time on?

Q. 2. Well now, during this time that you were keeping company together was there any talk between you and him as to marriage?

Q. 3. Did you ever talk with him in regard to his keeping company with you, or what his folks said about it?

Counsel in the brief do not tell us why in their opinion these questions were inadmissible; nor do they cite any authority to that effect. I will imitate their example in the economy of time, but I have long been of the opinion that this class of evidence was admissible in actions of this kind, for the purpose of showing to the jury the probability, or rather the want of great improbability, that the parties, starting in the evidence with a state of familiarity and intimacy with each other, as portrayed and illustrated by the evidence, finally reached the consummation of the greatest intimacy in at least premature cohabitation. This view of mine might be weakened by argument or authorities, but in the absence of either it remains my view.

Counsel for defendant in error call attention to the fact

that after all this evidence complained of under this head by the plaintiff in error was introduced, plaintiff in error himself came upon the stand and admitted repeated acts of cohabitation with the plaintiff in error, and they suggest that had this been done before the examination of the plaintiff in error, or, as I suppose, had it been suggested to her counsel that plaintiff in error would make this admission, they would not have conceived it necessary to have gone into the class of evidence objected to. But this intention on his part they could not anticipate. So that, in that stage of the trial, this evidence was properly received.

Under the third assignment, complaint is made of the refusal of the court to give to the jury instructions numbered from one to seven inclusive as prayed by the plaintiff in error. It is not deemed necessary to copy these instructions. They were offered upon the theory that the rules of evidence and of law applicable to criminal prosecutions are also applicable to cases of the character of the one at bar, and, consequently, all that was necessary to the acquittal of the accused, the plaintiff in error, was to raise in the mind of the jury a reasonable doubt of his being the father of the child in question. Special proceedings under the bastardy act have been said to be *quasi*-criminal. They are special proceedings with some of the peculiarities of criminal proceedings, and that is the most that can be said in that respect. I have been able to find no case, certainly none has been cited, in which it has been held that the rule of criminal law which requires a jury to be satisfied of the prisoner's guilt beyond a reasonable doubt before they can bring in a verdict of guilty applies to actions of this kind; nor do I think that, in the nature of the case, such principle of law is applicable. We are not entirely without authority on that point, and that without going out of our own court. I cite the fourth and fifth clauses of the syllabus in the case of *Altschuler v. Algaza,* 16 Neb., 631.

" 4. Where a reasonable doubt is raised as to the pater-

nity of a bastard child by reason of the complainant's connection with other men about the time it was begotten, other facts may be shown sufficient to satisfy the jury that the accused is the father.

"5. The proceeding under the bastardy act is essentially a civil one, and a preponderance of evidence is sufficient."

The fourth point is: "That the verdict is not sustained by sufficient evidence." It is an undisputed fact that the child was born on the 12th day of January, 1889. The usual period of gestation is stated by the medical witness on the part of the plaintiff to be from 270 to 280 days. According to this rule, the inception took place between the 6th and 16th days of April, 1888, both inclusive. The plaintiff in her testimony states the time that the defendant had the last intercourse with her as "some time in the first of April." She states that she is able to fix the date because she knew it by Mr. Melton going to York; that she didn't exactly know the day he did go, but thinks he said he had to be there some time the first of April. Being asked how long it was before that that she had this intercourse with the defendant, she answered: "It wasn't before that at all; it was afterwards, the next evening after he came the first time." This is repeated several times, together with the statement that Mr. Melton went to York, the county seat, on that occasion for the purpose of attending court; that he went to court more than once during that term, but that this was the day after the first time he went to court.

Harvey Melton testified that he was one of the jurymen at court at the April term of 1888; that he came from Waco to York for the purpose of attending court on what was called the midnight train, so as to be at court on the first day of the term; that he attended court on the first day of the term, which was the 16th day of the month, and it was admitted on the trial by counsel that the first day of the April term of the district court for 1888 was

the 16th day of April. Returning to the testimony of the plaintiff, it will be seen that to show that she referred to facts and circumstances believed to be sufficient to identify the date of her intercourse with the defendant as the day after the night in which the witness, Harvey Melton, left his home to attend the said term of court. So far as the evidence of the plaintiff is concerned, then, it was sufficient to prove to the jury the date of this occurrence as within the period of gestation as stated and contended for by the defendant in the brief of counsel. The defendant himself came upon the stand and testified that he had had repeated intercourse with the plaintiff, but he alleges that such acts of intercourse were at points of time not later than the 12th day of March, while the plaintiff alleges that the last one of said acts was on a day which we have seen is sufficiently located as the 16th day of April. The case then, as between these two witnesses, is one of conflicting testimony only. This presented a question for the jury; they have decided it in favor of the plaintiff. It is not deemed necessary to say anything of the testimony of the other witness who swore to certain facts which, if believed, would be strongly against the verdict; further than that he was sharply contradicted by the plaintiff, and that it is evident that the jury believed her instead of him, and it excites no wonder or surprise that they did. Plaintiff in the brief of counsel seeks to raise another point, and say: "It is not proper in any case of this kind to bring a child into the presence of the jury." It is sufficient to say that this point is not raised either by the pleadings, evidence, motion for a new trial, or in any other manner except that the child is referred to in a question to the plaintiff when on the witness stand as the child which was just taken out of the room, and she is asked if that is her child. It is unnecessary to observe that these circumstances raised no question, and were the foundation of no objection or exception. Whatever might be the opinion of this court as

to the impropriety of the proceeding, which has obtained
in some cases, of parading an illegitimate child before the
jury in a trial of this character, for the purpose of pointing
out a real or fancied resemblance between it and the alleged
father, or of exciting sympathy for the mother and child,
or of indignation against the person accused of its pater-
nity, there is no opportunity for the expression of that
opinion here.    The judgment of the district court is

AFFIRMED.

MAXWELL, J., concurs.

NORVAL, J., having presided in this case at the trial in
the district court, took no part in this opinion.