MILLARD MYUSKOVICH, Plaintiff in Error,

v.

STATE OF WYOMING, EX REL., ELEANORA OS-
BORN, Defendant in Error.

(No. 2260; Sept. 28, 1943; 141 Pac. 2d 540)

408

For the plaintiff and defendant in error, there was a brief by C. H. Harkins, D. J. Harkins, and C. R. Harkins, of Worland, Wyoming, and oral argument by D. J. Harkins and C. R. Harkins.

For the defendant and plaintiff in error, there was a brief by Noel Morgan of Worland, Wyoming, and Lin I. Noble of Thermopolis, Wyoming, and oral argument by Lin I. Noble.

## OPINION

BLUME, Justice.

This is a proceeding under the statute relating to illegitimacy. Eleanora Osborn, hereinafter mentioned as plaintiff, filed a complaint against Millard Myuskovich, hereinafter named as defendant, charging that she was an unmarried woman pregnant with child begotten by the defendant during the month of February, 1940; that the defendant is the father of the child. She asked that the defendant be brought before the court to answer the charge and that a warrant issue for his apprehension. This complaint was filed on June 22, 1940. Later, it was dismissed without prejudice. On December 18, 1941, the plaintiff filed another information against the defendant in the Justice Court of Washakie County of this State which, in the main part of the complaint, stated as follows: "Eleanora Osborn being first duly sworn on oath deposes and says: that she is an unmarried woman; that she is the mother of a child, Duane Stuart Osborn, begotten by the above named defendant, Millard Myuskovich; that said child was born at Worland, Wyoming on October 6, 1940, and said Millard Myuskovich is the father of said child.

Wherefore, she asks that said Millard Myuskovich be brought before said court to answer said charge and that a warrant issue for the apprehension of said defendant." The defendant was apprehended. A trial was had before a Justice of the Peace who committed him to appear in the District Court of Washakie County and who made a return of the papers in the case, including the complaint, to the District Court on January 7, 1942. On March 24, 1942, the defendant, by his attorney, filed a motion for continuance alleging that the case is one to determine the parentage of the child of plaintiff; that the defendant is charged with being the father of said child; and that defendant expects to show by witnesses who are absent that he is not the father; that the witnesses are in the United States Army and that it would be necessary to take their depositions. The record fails to show any order of the Court granting the motion for continuance, but it was evidently granted, for the trial of this case did not take place until May 11, 1942. In the District Court the case was tried to a jury who, on May 13, 1942, returned a verdict that the defendant is the father of Duane Stuart Osborn as charged in the complaint in the case. The evidence shows that at the time of the trial the plaintiff was about 20 years old, the defendant about 29; that the plaintiff and the defendant were then and had been during their life, or for many years, residents of Washakie County, Wyoming; and that plaintiff had never been married. Judgment was entered upon the verdict, directing that the defendant should pay to plaintiff the sum of $300. per annum till the child should become sixteen years of age, but only the sum of $200. per annum, if the defendant should be inducted into the Army. It also directed the payment by defendant of the expenses of the pregnancy and confinement of the plaintiff. A motion for a new trial, and an amended motion were filed. The Court did not act upon

these motions, and they were, accordingly, under the provisions of chapter 112, Rev. St. 1931, deemed overruled as of July 13, 1942. The defendant has brought the case here by petition in error. No question is raised in this court as to the sufficiency of the evidence to sustain the verdict, but a number of contentions are made to reverse the judgment, which we shall proceed to consider.

I. Toward the beginning of the trial, counsel for the defendant interposed the following objection: "Comes now the defendant, Millard Myuskovich, and objects to the introduction of any further evidence by the plaintiff for the reason that no sufficient petition, complaint, information or indictment is on file herein on which to base or maintain this, or any other action, under the Uniform Illegitimacy Law; that the defendant is not charged with having had intercourse with the plaintiff at any time within which, and as a result of which, the child of which the defendant is charged to be the father could have been conceived; that the files disclose that there are not sufficient facts alleged in any complaint, petition, information, or indictment on file herein to sustain a verdict of the jury, and a judgment of the court. Wherefore, defendant prays that judgment be entered for the defendant, and that he be discharged from further custody." It is contended at this time that the complaint filed in this case is wholly insufficient to confer jurisdiction upon the Court to try this case. Reliance is placed upon the provisions of section 20-433, Rev. St. 1931, reading as follows:

"Jurisdiction over proceedings to compel support is vested in the district court of the county in which the alleged father is permanently or temporarily resident, or in which the mother or the child resides or is found. It is not a bar to the jurisdiction of the court, that the complaining mother or child resides in another state."

Counsel claim that this section requires the com-

plaint to show either that the defendant or the plaintiff was a resident of Washakie County. It is stated in 49 C. J. 142 that "where jurisdiction depends on residence or citizenship, facts showing the existence of jurisdiction should be alleged." And, in 49 C. J. 143, it is stated that "ordinarily, it is not necessary that the declaration, complaint or petition should contain any allegations with respect to the residence of the parties, but such allegations must be made when the statute so requires, or where jurisdiction depends on the residence of the parties." In determining the effect of section 20-433, supra, we must consider other sections of the statute. Section 20-410, Rev. St. 1931, provides that:

"The complaint shall be in writing, or oral and in the presence of the complainant reduced to writing by the justice. It shall be verified by oath or affirmation of the complaint."

That section shows that the legislature intended the proceedings to be informal. Section 20-411, Rev. St. 1931, provides that:

"The complaint shall charge the person named as defendant with being the father of the child and demand that he be brought before the judge or magistrate to answer the charge."

That section states what is requisite to be stated in the complaint and appears to be the controlling section on the point here under consideration. It makes no requirement as to the residence of the parties, and it has been held that the complaint is sufficient if it complies with the statute. In Robie v. McNiece, 7 Vt. 419, 413, it is stated that "All that the statute requires is, that the mother shall charge the person in writing and on oath with having gotten her with child and being the father of the child. It is sufficient that she appear before the justice as a single woman, and in that char-

acter make her complaint." In Zweifel v. State, 27 Wis. 396, it is held that a complaint under the bastardy act is good if it conforms to the provisions of the statutes; and it need not state that the prosecutrix is a resident of the county where the action is brought, nor at what time and place the child was begotten. In Commonwealth v. Baxter, 267 Mass. 591, 166 N. E. 742, the court, announcing the same rule, stated as follows: "The complaint alleges that 'Wilhelmina M. McArdle of the City of Boston, in the County of Suffolk' on oath complains that the defendant did get her with child. While the evidence discloses that she lived within the judicial district of the West Roxbury district court, the defendant contends that since the complaint does not allege that the defendant or the complainant lives within said district, in accordance with G. L. c. 273, § 11, it does not show on its face that the West Roxbury district court had jurisdiction and that jurisdiction is a matter of record. It is a complete answer to this contention that the complaint followed in substance the form for pleadings under G. L. c. 277, § 79, which is considered sufficient in cases to which it is applicable. Commonwealth v. Snell, 189 Mass. 12, 18, 75 N. E. 75, 3 L. R. A. (N. S.) 1019; Commonwealth v. Harris, 232 Mass. 588, 591, 122 N. E. 749. The statutory form contains no requirement that the complaint must allege that the mother of the child resided within the judicial district of the court." See also: 7 C. J. 978-979; 10 C. J. S. 157; Neff v. State, 3 Ind. 564; State v. Demoss, 4 Ind. 165. Counsel for defendant have cited several cases from Oklahoma which hold that the complaint must show the residence of the mother of the child. We have examined the statutes in Oklahoma, which are not alone more stringent in their requirements than section 20-433, supra, but they, furthermore, contain no section corresponding to the provisions of section

20-411, supra, and hence the cases from that state are not authority in this case.

Furthermore, it is stated in 7 C. J. 979 that "notwithstanding a complaint in a bastardly proceeding is informal, yet where the record shows that the defendant made no objection thereto, any informality therein not affecting the merits of the case is deemed waived." In this case, the defendant was present at the examination in the Justice Court, and he cross-examined the complainant, and he made no objection to the complaint. Again, in 10 C. J. S. 152, it is stated that "Where a defendant in a bastardy proceeding secures continuances of the case from time to time, either by agreement or a motion, he thereby waives all questions of jurisdiction." In this case, as already stated, the defendant obtained a continuance in the District Court. The jurisdiction above mentioned, and that referred to in section 20-433, supra, is not, we think, jurisdiction of the subject matter. It relates to the venue of the action. And, it is stated in 67 C. J. 91 that "statutes relating to venue are procedural merely, and not jurisdictional in the strict sense." And, a general appearance waives objection to the venue. 67 C. J. 93. It is necessary in New York, in certain cases, to allege the residence of the defendant. But, it is held that the residence is not strictly a part of the cause of action; that it is a matter relating to the jurisdiction of the person, and may be waived by a general appearance. Yager v. Yager, 214 App. Div. 671; 212 N. Y. S. 707; Bunker v. Langs, 76 Hun. 543; 28 N. Y. S. 210; Gardner v. Condon, 117 Misc. Rep. 97; 190 N. Y. S. 756. The demurrer ore tenus did not raise the question here under consideration, at least specifically. Evidence showing that the residence of plaintiff, as well as defendant, was in Washakie County, was introduced without objection, so that the complaint may, under the decisions of this Court, be considered amended, if

that should be necessary. We think, accordingly, that we are constrained to overrule the contention made in this connection.

II. It is contended that a new complaint should have been filed in the District Court, and that without it, the Court had no jurisdiction to try the case. The statute provides that the examination shall take place in the Justice Court, and that, if the Justice finds probable cause, he shall bind the defendant in bond or recognizance with sufficient security to appear at the next term of the District Court to be held in the county. Sections 20-413-414, Rev. St. 1931. Section 20-414 further provides that "On neglect or refusal to furnish such security, he shall commit the defendant to jail to answer *the complaint.*" This evidently refers to the complaint filed in the Justice Court, and the statute appears to contemplate that the case shall be tried in the District Court upon that complaint. At least no provision is made requiring a new complaint to be filed in the District Court. The practice in the various jurisdictions appears not to be uniform. In some states the trial in the District Court is had upon the complaint filed in the Justice Court; in others, a new complaint is filed. 7 C. J. 985; 10 C. J. S. 165. It is said in 7 C. J. 981, that "The making of a proper complaint before a justice of the proper county and the holding to trial by such justice, either by commitment or by bond to appear in the proper court, are the means by which the trial court obtains jurisdiction to try the cause; and the filing of the transcript and the papers in the clerk's office completes the jurisdiction." It would seem, accordingly, that a new complaint was not necessary to confer jurisdiction. Moreover, the case at bar was tried upon the complaint filed in the Justice Court. No question was raised in the lower court, so far as we can find, that a new complaint should have been filed. If a new complaint should have been filed in the Dis-

trict Court, the lack thereof could not be considered more than an irregularity by reason of which the defendant was not prejudiced.

III. It is further contended that the complaint does not state a cause of action, aside from the want of allegation of residence, in that it does not appear that the child was born out of wedlock. The proceedings under the Uniform Illegitimacy Act, contained in sections 20-401 to 438, both inclusive, relate to children born out of wedlock, and the term "child" as used in section 20-411, supra, refers, as stated in section 20-401, supra, to a child born out of wedlock and not legitimated. Hence, to state a cause of action under section 20-411, supra, it is necessary that the complaint should show that the child in question was born out of wedlock, and that the defendant is the father thereof. The complaint should aver all the facts necessary to sustain the proceeding. 10 C. J. S. 165. At the same time, it must be borne in mind that the statute contemplates a proceeding not too technical. Furthermore, an examination reduced to writing is had in the Justice Court, by which the facts are developed, and in which the person charged with being the father of the child has the right to cross-examine the complainant. And, in this case, the defendant, in fact, cross-examined the plaintiff. The importance of these provisions and this right was mentioned in State v. Brathovde, 81 Minn. 503; 84 N. W. 340, and Campion v. Lattimer, 70 Neb. 245; 97 N. W. 290, pointing out that by reason thereof, omissions in the complaint could not ordinarily result in prejudice to the defendant. In the case of Greenback v. State, 169 Okla. 616; 36 P. 2d 882, the complaint alleged that the complainant was a single woman; that the defendant was the father of the child born to her, but omitted to state that the child was a bastard. As in the case at bar, the evidence showed that the child was in fact illegitimate. The Court said in part: "While

the allegations that 'said child was a bastard' could have been easily inserted, we do not perceive how the plaintiff in error has been injured by such omission in view of the other allegations in the complaint. The record fully discloses that the complaining witness was not married either at the time of the alleged acts of sexual intercourse, or at the birth of the child. * * * The requirements for a petition as defined in section 265, C. O. S. 1921, are, 'a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition,' and we are of the opinion that the complaint in this instance having described the mother as a single woman, a resident of Ottawa county, Okla., with the allegations that she had given birth to a child and that the plaintiff in error was the father of such child, in the absence of proper motion or demurrer is sufficient to justify the action of the court in overruling the plaintiff in error to the introduction of any evidence." In Collister v. Ritzhaupt, 83 Neb. 794; 120 N. W. 489, the situation appears to have been similar to the situation in this case, and though the complaint did not charge or show that the child was born a bastard, the court held that the defect in the complaint was waived. The court said in part: "The last point presented is: 'The complaint does not state facts sufficient to constitute a cause of action against the defendant and does not state facts sufficient to give the court jurisdiction.' This question was raised for the first time in the district court by an oral objection to the introduction of evidence. It is based on the failure of plaintiff to insert in the complaint before the justice of the peace the words of the statute that the child 'if born alive, may be a bastard.' The prosecution is a civil proceeding. Cottrell v. State, 9 Neb. 125; Kremling v. Lallman, 16 Neb. 280; Strickler v. Grass, 32 Neb. 811; In re Walker, 61 Neb. 803. In this state, rights conferred by statute upon defendant in a bas-

tardy proceeding may be waived by him. Strickler v. Grass, 32 Neb. 811. Irregularities in the preliminary steps may be waived by defendant the same as in other civil cases. Strickler v. Grass, 32 Neb. 811; Rose v. People, 81 Ill. App. 128; 5 Cyc. 665. The transcript shows that defendant appeared before the justice of the peace, and entered into a recognizance to appear at the next term of the district court to answer the accusation against him, and was released from custody thereunder. This was a waiver of any defect in the information, since, without objection thereto, he obligated himself to answer the accusation in the district court. Cook v. People, 51 Ill. 143; Collins v. Conners, 81 Mass. 49. Defects in the information having been waived, the filing of the transcript gave the district court jurisdiction. Altschuler v. Algaza, 16 Neb. 631." In Smith v. State, 73 Ala. 11, it was held that a motion to quash the affidavit and warrant in a bastardy proceeding, on the ground that the affidavit fails to aver that the prosecutrix was a single woman comes too late when made for the first time in the Circuit Court on appeal. Furthermore, the complaint, in this case, states that the plaintiff "is an unmarried woman." Webster's New International Dictionary, second edition, states that this may mean a woman who has not been married. In Dalrymple v. Hall, 16 Ch. Div. 715, it is held that the primary meaning of unmarried is "without ever having been married." That is borne out by decisions in this country. See 43 Words and Phrases, Permanent Edition, 334. While that is not necessarily the meaning as shown by the authorities, it is clear that the complaint in this case is susceptible of the interpretation that the plaintiff, never having been married, the child to which she gave birth was born out of wedlock. In other words, the allegation in the complaint can at best be only construed as stating the illegitimacy of the child imperfectly, which might have been subject to a

motion for a more specific statement, but was not ground for a demurrer ore tenus.

IV. As heretofore mentioned, the Court ordered that the defendant should pay to the plaintiff the sum of $300 per annum until the child should become sixteen years of age, provided that if the defendant should be inducted into the Army of the United States, he should pay $200 per annum. It is contended that the amount allowed is excessive. We do not think so. Defendant is an able-bodied man about thirty years of age. He has, as stated in the brief of his counsel, now been inducted into the Army. The Servicemen's Dependants' Allowance, Act of Congress of June 23, 1942 (56 United States Statutes At Large, pages 382-385) provides that an enlisted man who has no wife but one child shall pay for the child $22.00 per month, to which the Government will contribute $20.00 per month, making $42.00 per month in all. The term child, as used in the Act, includes "an illegitimate child, but only if the man has been judicially ordered or decreed to contribute to such child's support; has been judicially decreed to be the putative father of such child; or has acknowledged under oath in writing that he is the father of such child."

V. The defendant filed a motion for a new trial and amended motions, partially on the ground of newly discovered evidence. Affidavits of one A. W. Peterson and Ralph Lindsey were attached to the motion, relating in the main to the movements and whereabouts of the defendant on December 30 and 31, 1939 and January 1940. The defendant, sustained in part by his sister, had testified in regard to these facts, so that most of the testimony of the foregoing parties would have been cumulative, which would not require the granting of a new trial. Attached also was the affidavit of J. William Tuttle, in which he states that he saw

the complainant in bed with one Bill McDonald in January 1940 at the home of Dan McDonald in Worland. But, the record contains an affidavit of D. L. McDonald in which he states that Bill McDonald is his son, and that he knows of his own personal knowledge that Bill McDonald was not in Worland in the months of December 1939 and January 1940. The granting of a new trial is largely in the discretion of the trial court. Wells v. McKenzie, 50 Wyo. 412; 62 Pac. 2d 305, and we do not believe that the newly discovered evidence was sufficient to require it to grant one in this case.

VI. The trial court allowed the plaintiff the sum of $73 to pay the expenses of her pregnancy and confinement. Counsel claim that "there is no provision for any such item to be made a part of the judgment." Section 20-401, supra, provides that "The father is also liable to pay the expenses of the mother's pregnancy and confinement." This clearly authorized the court to make the order which it did in this connection.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.