In re Application of Walker.

---

IN RE APPLICATION OF JOHN WALKER FOR A WRIT OF HABEAS CORPUS.

FILED MAY 22, 1901.   No. 11,977.

1. **Habeas Corpus:** VOIDABLE JUDGMENT. A prisoner held under a process in due form issued upon a judgment can not obtain his discharge by habeas corpus, unless the judgment is void, and not merely voidable.

2. **Suit Against Putative Father of Bastard, Civil Action with Extraordinary Remedy.** A suit against the putative father for the maintenance of his illegitimate child is essentially a civil action, accompanied by the extraordinary remedy of arrest and imprisonment for the purpose of enforcing a judgment rendered in the case.

3. **Bastardy Act:** POLICE POWER: ENFORCEMENT OF MORAL OBLIGATION. The bastardy act is an exercise of the police power of the state, the object of which is to require the putative father, in compliance with his moral obligation, to furnish support for his child and indemnify the public against liability for its care and maintenance.

4. ———: JUSTICE JURISDICTION, How ACQUIRED. A justice of the peace obtains jurisdiction over a defendant under the act in question by the filing of the statutory complaint, duly verified; the issuance of a warrant for the arrest of the defendant, and its execution, the execution of the process serving the same office as the service of a summons in an ordinary civil action.

5. **Jurisdiction of District Court, How Acquired.** In a proceeding

under the bastardy act the district court acquires jurisdiction by the filing of the transcript of the proceedings had before the justice of the peace, based on a proper complaint, arrest of the accused, and order requiring him to appear before the district court for trial. *Altschuler v. Algaza*, 16 Nebr., 631.

6. ———: SCOPE OF JURISDICTION: ABSENCE OF DEFENDANT. The district court having acquired jurisdiction by the filing of a transcript of the proceedings had before a justice of the peace, is empowered to try the case and render judgment, even though the defendant be not personally present.

7. **Failure of Defendant to Appear and Plead:** TRIAL TO COURT WITHOUT JURY. Where a defendant fails to appear in the district court, in pursuance to an order made at the preliminary inquiry had before a justice of the peace, and enters no plea to the complaint, a trial may be had to the court without the aid of a jury provided for by section 5 to try the issue on a plea of not guilty.

8. **Failure to Impanel Jury:** CORRECTION OF ERRONEOUS JUDGMENT BY HABEAS CORPUS. The failure to impanel a jury to try the issue would not go to the jurisdiction of the court, but, at most, render the judgment erroneous, the correction of which could not be had by proceedings in habeas corpus.

9. **Inter-State Extradition:** PROSECUTION FOR ANOTHER CHARGE: CIVIL LIABILITY. A defendant brought to this state on requisition, in good faith, and not as a pretext or device to serve some ulterior purpose, may be prosecuted on any other charge of violating the laws of the state or for a civil liability or obligation resting upon him, and is not exempt from service of process until a reasonable time elapses in which to return to the state from which he was brought under the requisition.

10. ———: DEFENDANT NOT ENTITLED TO IMMUNITY FROM SERVICE OF PROCESS. A defendant brought into the jurisdiction of the courts of this state, on requisition from another state, is not entitled to immunity from service of process, civil or criminal, until a reasonable time elapses in which to withdraw from the jurisdiction, such as is ordinarily extended to suitors and witnesses whose attendance at court is voluntary.

ORIGINAL application for a writ of habeas corpus to release the relator from commitment to enforce a judgment of filiation. *Writ denied.*

*Matthew Gering,* for relator.

*Jesse L. Root, C. S. Polk* and *C. E. Tefft,* contra.

HOLCOMB, J.

The petitioner, John Walker, brings an original action in this court for a writ of habeas corpus, alleging in his petition that he is unlawfully restrained of his liberty by the sheriff of Cass county, in whose custody he is held by virtue of a capias writ issued out of the district court of said county. It appears from the record that the writ was issued on a judgment of filiation, rendered in an action pending in said court against the petitioner, in which said judgment it was ordered by the court that the defendant, the petitioner, pay to the plaintiff in the action the sum of $138.75, for the care and expense connected with the birth, care and death of a bastard child, he being adjudged to be the reputed father, and the costs of the action; in default of which payment or the securing of the payment thereof, the defendant should be committed to the jail of the county until the judgment be complied with. The facts in the case are stipulated by the parties. There are but two questions of controlling importance, necessary to be considered in a proper determination of the controversy, which will appear in the further discussion of the subject. In September, 1900, a complaint was entered by Lillie Parker, an unmarried woman, before a justice of the peace of Cass county, under the provisions of chapter 37 of the Compiled Statutes of 1899, charging the defendant with being the father of her illegitimate child, of which she had been delivered a short time previous. A warrant was issued and the defendant arrested and brought before the justice, and upon defendant's application a continuance of the hearing contemplated by statute was had, and he entered into a recognizance to appear at the time to which the hearing was continued. Upon a hearing had before the justice of the peace as to the truth of the charge made against the defendant, at which he was present, evidence was submitted and reduced to writing as required by statute, upon consideration of which it was found that the com-

plaint was established; and the defendant was required to enter into a recognizance in the sum of $500 for his appearance at the next term of the district court, to answer the accusation made against him and abide the order of the court. The defendant was placed in the custody of a constable for the purpose of securing the recognizance required, and, neglecting to give the same, a mittimus was issued authorizing his commitment to the jail of the county. Before execution of the mittimus the defendant escaped from the custody of the constable and fled to the state of Iowa. A transcript of the complaint and all proceedings had before the justice of the peace was duly made, certified and filed in the office of the clerk of the district court of Cass county on the first day of the next term thereof held after the preliminary hearing had before the justice of the peace. The defendant failing to appear at said term of the district court, his default was duly taken and entered, and the case coming on for hearing, evidence was submitted to the court without the intervention of a jury, upon consideration whereof it was by the court adjudged that the defendant was the reputed father of the bastard child of the plaintiff, liable for its support and maintenance, and awarding judgment accordingly as herein first mentioned. The defendant was afterwards arrested on a capias issued upon the judgment and held in custody because of his failure and default in complying with the judgment so rendered.

It is contended by counsel for the petitioner, and argued in his brief, that the judgment, which is the foundation for the process directing the arrest and imprisonment of the defendant, is void for want of jurisdiction over his person of the court rendering the judgment, the precise question being that because the defendant was not personally present in court and had entered into no recognizance for his presence thereat, and having fled from the custody of the officer detaining him under the mittimus, jurisdiction by the district court was never

acquired over his person. We are, therefore, to inquire in what manner does the district court obtain jurisdiction in a proceeding of the character under consideration? Is it by filing a transcript of the complaint and proceedings had before a justice of the peace,—who, it must be conceded, in this case was empowered to act and had the jurisdiction which was exercised at the preliminary inquiry,—or must the personal presence of the defendant, voluntarily or involuntarily, be had in the district court before it is authorized to render judgment in the case?

Preliminary to what follows we, perhaps, should here note that habeas corpus proceedings can not be resorted to for the purpose of correcting errors of the trial court rendering the judgment which is challenged in such proceedings. If the prisoner is held under a process in due form issued upon a judgment, he can not obtain his discharge by habeas corpus, unless the judgment is void and not merely voidable. Freeman, Judgments, sec. 619, citing *Ex parte Marx*, 86 Va., 40; *In re Coy*, 127 U. S., 731, 757, and *Ex parte Watkins*, 3 Pet. [U. S.], 191, 202. The bastardy proceedings must also be regarded as essentially a civil action, accompanied by the extraordinary remedy of arrest and imprisonment for the purpose of enforcing a judgment rendered in the case. *Ex parte Cottrell*, 13 Nebr., 193; *Altschuler v. Algaza*, 16 Nebr., 631; *Strickler v. Grass*, 32 Nebr., 811. While in its character the proceeding is a civil action under the statute, the act is, properly speaking, the exercise of the police power of the state, the object of which is to require the putative father, in compliance with his moral obligation, to furnish support for his child and indemnify the public against liability for its care and keeping, "to compel him to assist in the maintenance of the fruit of his immoral act" and to prevent the child from becoming a county charge. *Stoppert v. Nierle*, 45 Nebr., 105, 117, and cases therein cited. It is practically conceded that the justice of the peace, before whom the preliminary proceedings

were had in the case, had jurisdiction and authority to act regarding the case, in so far as his powers were exercised. This jurisdiction was obtained by the filing of the statutory complaint, duly verified, and the issuance of a warrant thereon, and the arrest of the defendant. The process by which the court acquired jurisdiction over the defendant was the warrant issued for his arrest, and its execution serves the same office as the service of a summons in an ordinary civil action; and the court thereby acquired jurisdiction over the person of the defendant. *Altschuler v. Algaza, supra; Beckett v. State,* 30 N. E. Rep. [Ind.], 536. The justice can not try the case. He may make only an examination, and, if the evidence warrants it, require the defendant to enter into a recognizance to appear at the next term of the district court, there to answer the complaint and abide by the order of the court. This proceeding, however, is required only in the event of the defendant's failure to comply with the provisions of section 1, for the payment of money or transfer of property to the plaintiff, and to give an obligation to save the county free from charge toward the maintenance of the child; if the defendant comply with these provisions, he is entitled to be discharged. On the district court, the statute has conferred original jurisdiction to try the case on its merits, render judgment of filiation, and for the maintenance of the illegitimate child in such sum as may be ordered. *Munro v. Callahan,* 41 Nebr., 849.

Has the district court jurisdiction for this purpose when a defendant has not personally appeared therein, under the facts and circumstances as in the case at bar? In *Altschuler v. Algaza, supra,* it is held in the syllabus: "In a proceeding under the bastardy act the district court acquires jurisdiction by the filing of the transcript of the proceedings before the justice, based on a proper complaint, arrest of the accused, and order requiring him to appear before the district court for trial." The record in this case discloses that a transcript of all the proceedings

had before the justice of the peace were duly filed in the office of the clerk of the district court, and jurisdiction, it would seem, was by the court thus acquired as fully as if the defendant had voluntarily submitted his person to the jurisdiction of that court and afterward departed without leave. The court having secured jurisdiction by the filing of the transcript, the vital question next presented is whether the court has jurisdiction to render a judgment in the absence of the defendant? Jurisdiction having been acquired at the commencement of the action and the case, after the examination contemplated by the statute before the justice, having been transferred to the district court for a continuation of the proceeding, we observe no good reason for holding that the case may not be proceeded with and a proper judgment rendered, of the same validity and force, and to the same extent, as though such proceeding were in the first place had in the district court. The action being civil in character, there would seem to be no pressing necessity for the defendant's presence if he voluntarily absents himself from the court at the time of the hearing had in that tribunal. The court has jurisdiction over the person of the defendant and the subject-matter by the filing of the transcript, and, as we view the entire scope and object of the statute, is empowered to try the case and render judgment, even though the defendant be not personally present. The object of the statute providing for the detention of the defendant· in confinement, or his recognizance for his appearance in the district court, is manifestly for the purpose of enforcing summarily the judgment rendered in the action, and not to confer jurisdiction on the court —this had already been accomplished in the manner stated. It is observed by Bellows, J., in a well considered case, *Stokes v. Sanborn*, 45 N. H., 274, 276: "Indeed, it is quite obvious, that the object of the law is to redress a civil injury by compelling the putative father to aid the mother in the support of the child, and to indemnify the town, chargeable with its support, against the ex-

penses which may be incurred thereby; giving to the court the power to require of the father or the mother, or both, security against this liability. * * * Some of the forms of this proceeding, it is true, are borrowed from the criminal law, but these are simply with the view of giving a more summary and stringent character to the . process, by which the respondent is brought into court and held to answer to the charge; leaving it, in most other respects, to stand upon the footing of ordinary civil causes. It is, therefore, held, in *Marston v. Jenness* [11 N. H., 156] and *Little v. Dickinson* [29 N. H., 56], * * * that the respondent is not arraigned, but appears and pleads by attorney. Under a similar law in Massachusetts, this is held to be a civil proceeding. *Wilbur v. Crane*, 13 Pick. [Mass.], 284; *Williams v. Campbell*, 3 Met. [Mass.], 209. So in *Mariner v. Dyer*, 2 Greenl. [Me.], 165; *Hinman v. Taylor*, 2 Conn., 357; *Robie v. McNiece*, 7 Vt., 419; *Gray v. Fulsome*, 7 Vt., 452; *Smith v. Lint*, 37 Me., 546. It being settled, then, that . proceedings under this law are to be. regarded as civil actions,. the question is, whether there is anything in their nature, or anything to be implied from the provisions of the statute, that requires the personal presence of the respondent at the trial, or the rendition of judgment, or that takes such cases out of the general rule, that judgment in civil actions may be rendered upon default. The service in these cases is by the arrest of the body, and security taken for the appearance of the respondent at the proper court, by bond; and, although the form of the proceeding is more summary, yet in substance it is like the cases of arrest and bail in ordinary civil process; and, upon a careful consideration of the question, we are of the opinion that a trial and judgment may be had without the personal attendance of the respondent, or that judgment may be rendered on default. Indeed, it may be regarded as settled here, that the respondent need not be arraigned, but may plead by attorney, from which a strong inference arises that his presence in person is not

necessary." In England, under statutes the scope and object of which are similar to ours, it is held that jurisdiction may be acquired by leaving summons at the place of residence of the accused and, upon hearing, judgment may be rendered by default and enforced summarily by arrest and imprisonment when defendant is within the jurisdiction of the court. *Regina v. Webb*, 65 Law J. M. Cas., 98; *Regina v. Lee*, 58 Law T. [n. s.], 384; *Regina v. De Winton*, 53 Just. P., 292, 59 Law T. [n. s.], 382. See, also, *Blood v. Morrill*, 17 Vt., 598; *Chandler v. Commonwealth*, 4 Met. [Ky.], 66, 68; *Lucas v. Hawkins*, 102 Ind., 64, 1 N. E. Rep., 358.

It is also contended that the default and trial to the court without a jury renders the judgment void, for the reason that section 5 of the act provides for a trial to a jury upon the issue of a plea of not guilty. In this case there was no issue raised by a plea of not guilty. There was no demand for a jury to try an issue not raised by a plea entered by the defendant. By his default he practically confessed the charge. The plaintiff was at liberty to submit her evidence to the court. While the defendant, being present, could demand a jury to try the issues raised, yet he is not, because of his absence, in a position to complain. The court could properly determine the matter without the aid of a jury. *Wolf v. State*, 11 Ind., 231; *Mariner v. Dyer*, 2 Me., 165. Even though the statute should be construed as requiring the trial of the issue of defendant's guilt to be submitted to a jury, the failure to observe the requirement would not go to the jurisdiction of the court, but, at most, render the judgment erroneous, the correction of which could not be had by proceedings in habeas corpus. *In re Fife*, 110 Cal., 8; *Lowery v. Howard*, 103 Ind., 440; *Ex parte Miller*, 82 Cal., 454; *State v. Sheriff*, 24 Minn., 87.

The second question of importance is whether the defendant, at the time the capias was served upon him, was privileged from arrest by reason of the fact that he had been brought into the jurisdiction of the court under an

extradition warrant, to answer for a crime or charge of which he was discharged, and immediately rearrested on a process issued on the judgment rendered in the case at bar. His counsel contends that the asylum state from which he was extradited was, by the choice of the defendant, made his home, and constituted his domicile, to which he should have been allowed a reasonable time to return, and during such time he was entitled to immunity from arrest; and that the service of the writ was an unlawful act and the subsequent restraint likewise unlawful. Two subordinate propositions are involved in the consideration of this phase of the case: First, are there any express provisions in the laws and rules governing extradition which are violated, directly or indirectly, by the service of process, civil or criminal, on one who has been extradited to answer a charge of violating the criminal laws, without allowing him the immunity contended for? And, second, is there a sound rule or policy of the law in the administration of justice which forbids the service of such a writ without extending the privilege of departing within a reasonable time from the jurisdiction to which a person has been brought, against his will, by virtue of the laws providing for rendition and extradition of fugitives from justice, after discharge from custody on the charge by reason of which the requisition was granted? In a late case, *Lascelles v. Georgia*, where the question of the rights of such a person was directly in issue, it is stated in the syllabus: "As between the states of the union, fugitives from justice have no right of asylum, in the international sense; and a fugitive who has been returned by interstate rendition may be tried for other offenses than that for which his return was demanded, without violating any right secured by the constitution or laws of the United States." 13 Sup. Ct. Rep., 687, 148 U. S., 537.* Says Mr. Justice Jackson, who wrote the opinion: "The sole object of the provision of the constitution, and the act of congress to carry it

*The same case, 90 Ga., 347, 16 S. E. Rep., 945.—REPORTER.

into effect, is to secure the surrender of persons accused of crime, who have fled from the justice of the state, whose laws they are charged with violating. Neither the constitution, nor the act of congress providing for the rendition of fugitives upon proper requisition being made confers, either expressly or by implication, any right or privilege upon such fugitives, under and by virtue of which they can assert, in the state to which they are returned, exemption from trial for any criminal act done therein. No purpose or intention is manifested to afford them any immunity or protection from trial and punishment for any offenses committed in the state from which they flee. On the contrary, the provision of both the constitution and the statutes extends to all crimes and offenses punishable by the laws of the state where the act is done. *Commonwealth of Kentucky v. Dennison,* 24 How., 66, 101, 102; *Ex Parte Reggel,* 114 U. S., 642." If a defendant brought into another state by requisition is not exempt and has no immunity from arrest and prosecution for any crime committed against the laws of the state to which he has been returned, there certainly can be no good reason assigned why he should be exempt from summary proceedings by arrest and imprisonment to enforce a judgment lawfully rendered against him, or be subject and liable to process in any civil action in which a legal obligation rests upon him. The law applicable in both instances and the reasons therefor are the same. There is, in fact, no express authority in the federal laws, regulating the subject of interstate extradition of fugitives from justice, granting the immunity claimed; and we must look to the question of a sound policy or rule of law in the administration of justice for the privilege, or its existence must be denied. Some state courts have extended immunity in all cases from both criminal and civil process by confusing the laws of extradition as between foreign states and countries with the law of interstate extradition. This is noted and discussed in the case of *Lascelles v. Georgia,* last cited.

In many cases immunity from prosecution, civil and criminal, has been extended for a reasonable time, because the return of the fugitive was obtained unlawfully or by fraudulent means, or for the purpose of subserving some different or ulterior purpose than that indicated in the proceedings in extradition, such as the collection of a private debt or other like purpose. *In re Robinson*, 29 Nebr., 135; *Compton v. Wilder*, 40 Ohio St., 130. In the case last cited, which is relied on by counsel for the petitioner, it is disclosed that Wilder had been brought from Pennsylvania on a requisition issued by the governor of the state of Ohio, upon application of Compton, Ault & Co.; that he waived an examination and entered into a recognizance to appear before the court of common pleas; that he was released from custody, and before he could depart was arrested by Compton, Ault & Co. in a civil action against him commenced in the superior court, and that he by motion asked the court to set aside the service of summons and order of arrest and to discharge him from custody. The motion was granted and the case was taken to the supreme court. In affirming the judgment discharging the defendant, the supreme court said: "In this case this machinery [the extradition] was set in motion by Compton, Ault & Co., by their application to the governor of Ohio. * * * It was bad faith in Compton, Ault & Co. to commence a civil action * * * before conviction and before he [Wilder] had an opportunity to return to his home. * * * The temptation to make it [extradition] subservient to private interests is great. * * * [It] has been seen and appreciated by the chief executives of many states, and to guard against it rules and regulations are being adopted, which may make the extradition of an alleged fugitive, in a proper case, extremely difficult. * * * The certain remedy to prevent its [the abuse of extradition] growth is, to deprive all persons who participate in the misuse of the power to extradite persons, alleged to be fugitives from justice, of the fruits resulting from such participa-

tion." In *Adriance v. Lagrave*, 59 N. Y., 110, the court holds substantially to the same views; "but," says Justice Barrett, in *Browning v. Abrams*, 51 How. Pr. [N. Y.], 173, "this rule does not apply to persons not concerned in the device." To the same effect also is *Slade v. Joseph*, 5 Daly [N. Y.], 187.

In the present case the record is wholly free from any evidence of bad faith, fraud or other unwarranted means in procuring the return of the petitioner to this state to answer the offense charged, for which he was extradited. It is conceded, as we understand counsel for relator, that the proceeding begun and had upon that charge was in good faith and to subserve only the ends of public justice, and that the plaintiff in the bastardy proceedings, or others connected therewith, were in nowise connected, concerned in or had anything whatever to do with the criminal charge and prosecution, which formed the basis of the extradition proceedings. The privilege from service by process, claimed by the petitioner, must be granted, if at all, under the immunity that exists generally in favor of suitors and witnesses attending voluntarily on courts or other tribunals where their presence is required in the furtherance of justice and the due adminstration of the law. Does the reason for the rule apply in his case as it exists and is acknowledged in the general class of cases mentioned, where the attendance is voluntary on the part of the person thus privileged?

*Williams v. Bacon*, 10 Wend. [N. Y.], 636, is an authority bearing on the subject. It is there stated in the syllabus: "It is no cause for setting aside an arrest on a capias under an order to hold to bail, that the defendant was brought into this state as a fugitive from justice. It seems, however, that had the criminal proceeding been a mere pretext to bring the defendant within the jurisdiction of the court for the purpose of proceeding against him *civiliter*, that the defendant would have been discharged." In the opinion it is said by Nelson, J.: "The defendant is not within the rule privileging suitors and

witnesses from arrest whilst going to, attending at or returning from court; for if so, the rule allowing criminals in custody to be charged in civil actions in the usual way would not have been established, for the privilege would have been an answer to the suit. It would be unjust and unreasonable to extend this privilege to cases of this kind; for it must continue, if it exist at all, during the whole period of the criminal custody; it might and would lead to great abuse. There is no pretense that the criminal proceeding in this case was a mere pretext to bring the defendant within the jurisdiction of the court for the purpose of proceeding against him *civiliter*."

In *Moore v. Green*, 73 N. Car., 394, it is observed by Rodman, J.: "Parties in civil actions appear in court voluntarily, and should be encouraged to appear, by immunity from arrest; whereas defendants in criminal actions appear involuntarily, and need not be encouraged."

In the case of *Reid v. Ham*, 56 N. W. Rep. [Minn.], 35, after citing *Lascelles v. Georgia, supra; People v. Cross*, 135 N. Y., 536 [32 N. E. Rep., 246], and *Commonwealth v. Wright*, 33 N. E. Rep. [Mass.], 82, it is stated by the author of the opinion: "These decisions logically, if not necessarily, lead to the conclusion that detention under such criminal proceedings affords no exemption or privilege from civil prosecutions; and this has been so decided. *Williams v. Bacon*, 10 Wend. [N. Y.], 636; *Adriance v. Lagrave*, 59 N. Y., 110."

The immunity from service of process extended to suitors and witnesses attending court is founded on considerations of wisdom, and is well calculated to assist in the due administration of justice. It needs no argument to sustain the proposition that whatever encourages the attendance of witnesses at the trial of any case in controversy in the courts will conduce more certainly to a rightful determination and assure to a party litigant the protection of all his rights guaranteed by law. This desired result can best be accomplished by steadily adhering to a policy which will save to all, whose attendance is

In re Application of Walker.

desirable in the furtherance of the ends of justice, and who come voluntarily, annoyance, inconvenience and oftentimes oppression by the service of process upon them while present in any stated jurisdiction for the purposes mentioned. This privilege has constantly been safeguarded by the courts, and the rule can doubtless be safely and confidently invoked by all who come within its scope and purview. The petitioner in the case at bar does not, however, come within the reason of the rule. His presence is involuntary and against his will. He was brought into the state forcibly and for the purpose of answering a charge of violating its laws. The reason for extending the rule of immunity is wanting in his case. If he may rightfully be prosecuted for another crime, he may with equal propriety be held to respond to any civil liability resting upon him. There exists the same reason for granting immunity for the one as the other. There being no positive law granting the privilege, and no good and valid reason existing for extending to the defendant the immunity granted to suitors and witnesses generally, the service of the writ is held to be lawful. The judgment is valid and binding, and an obligation is thereby placed upon the defendant to comply with its terms, which he can not escape by the present proceeding. His detention appearing to be in conformity with law, the writ prayed for must be denied.

JUDGMENT ACCORDINGLY.

NOTE.—The question as to whether an extradited fugitive may be proceeded against for offenses other than those named in the warrant is discussed in Hawley, Inter-State Extradition, pp. 79-111.— REPORTER.