In re THAW.  (No. 7091.)

(Supreme Court, Appellate Division, First Department.    April 16, 1915.)

1. EXTRADITION ⬤⟿41—INTERSTATE—RIGHTS OF ACCUSED AFTER EXTRADITION.
    Under Const. U. S. art. 4, § 2, providing that a person charged in any
    state with crime who shall flee from justice and be found in another state
    shall on demand on the executive authority of the state from which he
    fled be delivered up to be removed to the state having jurisdiction of the
    crime, and Rev. St. U. S. §§ 5278, 5279 (U. S. Comp. St. 1913, §§ 10126,
    10127), enacted to ·carry into effect the provision, an extradited fugitive
    is not exempt from criminal prosecution of other offenses or civil process
    without first being given a reasonable opportunity to return to the state
    surrendering him.

    [Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 51–53; Dec.
    Dig. ⬤⟿41.]

2. CONSTITUTIONAL LAW ⬤⟿73—EXTRADITION—MOTIVE OF EXECUTIVE—JUDI-
    CIAL POWER.
    The question of the good faith of the state demanding the return of a
    fugitive in another state is a political and not a judicial question, for
    there are no limitations on the right of the executive to grant extradi-
    tion save such as are imposed on the Constitution.

    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 134–
    137; Dec. Dig. ⬤⟿73.]

3. EXTRADITION ⬤⟿41—INTERSTATE—RIGHTS OF ACCUSED AFTER EXTRADITION.
    Where one acquitted of crime because of insanity was committed to the
    Matteawan State Hospital until discharged by due course of law, and then
    escaped from the hospital and was indicted with others, for conspiracy
    to effect his escape, and was extradited from a sister state and acquitted
    on the conspiracy charge, he was subject to the order of commitment with-
    out being permitted to return to the state surrendering him, and he could
    be discharged from the hospital only by due course of law on it being
    ascertained that he was sane.

    [Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 51–53; Dec.
    Dig. ⬤⟿41.]

Appeal from Trial Term, New York County.

In the matter of Harry K. Thaw.  From an order denying a mo-
tion to direct the warden of the city prison of the city of New York
to surrender Harry K. Thaw to the sheriff of the county of New
York by whom he was then detained and directing the sheriff to ac-
company and safely conduct him to the state of New Hampshire, and
denying a motion for a stay of execution of an order committing the
said Harry K. Thaw to the Matteawan State Hospital for the Insane,
to continue for a reasonable time to permit him to depart from the
state of New York, he appeals.  Affirmed.

In January, 1907, the appellant Thaw was indicted by the grand jury of the
county of New York for the murder of one White.  It is alleged and not de-
nied that Thaw then was and has since continued to be a citizen and resi-
dent of the state of Pennsylvania.  In January, 1908, on the trial of the in-
dictment, the jury disagreed; but thereafter and in January, 1908, he was
again brought to trial before a justice of the Supreme Court, and a jury,
and was acquitted on the ground that he was insane at the time of the com-
mission of the alleged crime.  On February 1, 1908, by an order of said jus-
tice, Thaw was committed to the Matteawan State Hospital, "until thence
discharged by due course of law," and in pursuance of this commitment Thaw
was confined in said hospital.  In July, 1912, proceedings were instituted in

the Supreme Court by or in behalf of Thaw for his release on the ground that he was sane, and, as the result of an inquiry had in pursuance of such proceedings, the court determined that Thaw was insane, that his discharge would be dangerous to the public peace and safety, and he was accordingly remanded to the hospital, where he remained until August 17, 1913, when he escaped, and, being sought for by the authorities of the state of New York, was finally located in the state of New Hampshire. In October, 1913, Thaw was indicted by the grand jury of the county of New York for the crime of conspiracy, in that he had with sundry other persons conspired to effect his escape from said hospital, in violation of section 580 of the Penal Law (Consol. Laws, c. 40). In November, 1913, the Governor of this state granted a requisition addressed to the Governor of the state of New Hampshire for the return of Thaw, who was then in the custody of the New Hampshire authorities. This requisition was based upon the aforesaid indictment for conspiracy. On November 8, 1913, the Governor of New Hampshire issued his warrant for the extradition of the alleged fugitive. On a writ of habeas corpus Thaw was subsequently taken before the judge of the District Court of the United States for the District of New Hampshire, in which proceeding an order was made directing his release, but on appeal to the Supreme Court of the United States, the order of release was reversed. Drew, etc., v. Thaw, 235 U. S. 432, 35 Sup. Ct. 137, 59 L. Ed. ——. Having been brought back to the county of New York by the authorities thereof, Thaw was placed on trial on the indictment for conspiracy on which he had been extradited, and was acquitted, whereupon the people moved that the warden of the city prison where Thaw was confined be directed to deliver him up to the officers of the Matteawan State Hospital in pursuance of the aforesaid commitment. Application was thereupon made to the justice presiding at the trial of the indictment for conspiracy, for Thaw's release, upon which application the order from which this appeal is taken was made.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Morgan J. O'Brien and John B. Stanchfield, both of New York City, for appellant.

Franklin Kennedy and Frederick E. Cook, Deputy Attys. Gen., for respondent.

HOTCHKISS, J.  Prior to the year 1886, the decisions of state courts, and as well those of inferior federal courts, were conflicting upon the question whether a fugitive who had been extradited from a foreign country could, in any state or federal court, be proceeded against for a crime other or different from that for which he had been extradited, or whether he could be subjected here to process in civil proceedings. In Adriance v. Lagrave, 59 N. Y. 110, 117 Am. Rep. 317, the Court of Appeals has held that, in the absence of an express treaty stipulation, there was no implied obligation binding upon state courts not to detain an extradited person brought within their jurisdiction from a foreign country for any act, criminal or civil, committed prior to the extradition, except the crime for which he had been surrendered, and that such a person might be detained here on civil process. In 1886 the decision in U. S. v. Rauscher, 119 U. S. 407, 7 Sup. Ct. 234, 30 L. Ed. 425, set the question at rest. It was there held that, under the treaties existing between this country and most of the civilized countries of the world, the treaties themselves and the acts of Congress passed for the enforcement thereof exempted the fugitive from trial for any other offense than that for which he had been extradited, until he had had an opportunity to return to the

country from which he had been taken. Although Rauscher had been extradited for a crime, the principles of the decision were so broad as to comprehend the detention on civil process of any one so extradited.

[1] On the question whether the rule of international extradition should be applied between the states under the provisions of the United States Constitution, art. 4, § 2, and the laws of the United States (Rev. St. §§ 5278, 5279) passed to carry the same into effect, the decisions of the state courts continued to be at irreconcilable variance. In this state (People ex rel. Post v. Cross, 135 N. Y. 536, 32 N. E. 246, 31 Am. St. Rep. 850), Massachusetts (Com. v. Wright, 158 Mass. 149, 33 N. E. 82, 19 L. R. A. 206, 35 Am. St. Rep. 475), and in other states, the decisions in which certainly constituted the weight of authority, it was held that the obligation of the states to surrender fugitives was not founded upon comity or treaty, but solely upon the Constitution, and was not limited to specific offenses, but embraced all crimes, and that, inasmuch as neither the Constitution nor any law of the United States imposed as a condition that the state to which a fugitive was surrendered could not try him for any° other offense than that upon which he had been brought within its jurisdiction, no such condition would be implied. The question remained unsettled until the decision of Lascelles v. Georgia, 148 U. S. 537, 13 Sup. Ct. 687, 37 L. Ed. 549, which confirmed the result theretofore reached in the New York and Massachusetts cases. Mr. Justice Jackson, writing for the entire court in the Lascelles Case, rejected the argument that "a fugitive from justice acquires in the state to which he may flee some state or personal right of protection, improperly called a right of asylum, which secures to him exemption from trial and punishment for a crime committed in another state, unless such crime is made the special object or ground of his rendition," and applied the rule that the jurisdiction of a court in a criminal case, unless restricted by treaty or statute, is in no wise dependent upon the circumstances under which the defendant has been brought within such jurisdiction.

Prior to the Lascelles Case, in several states it had been decided that an extradited person was not subject to arrest on civil process until he had had a reasonable opportunity to return to the state which had surrendered him. The decisions to this effect cited to us by the appellant are In re Cannon, 47 Mich. 481, 11 N. W. 280; (1882) Compton Ault Co. v. Wilder, 40 Ohio St. 130 (1883), and Moletor v. Sinnen, 76 Wis. 308, 44 N. W. 1099, 7 L. R. A. 817, 20 Am. St. Rep. 71 (1890). In the Ohio Case the decision went on the ground of fraudulent abuse of process by an individual who had procured the extradition proceedings to be instituted. The Wisconsin case seems to have been decided on the theory that a defendant brought within the state by criminal process after acquittal is exempt from civil process for a reasonable time thereafter to permit him to leave the state, the court holding that in this respect the rule was the same as in the case of a suitor voluntarily coming into the state. The Michigan case went on the same ground, and also held that the exemption extended to crimes other than those on which the extradition was based. Since the Lascelles Case, however, all of the decisions to which we are cited

held that an extradited fugitive is not exempt from civil process in the state to which he has been rendered. Reid v. Ham, 54 Minn. 305, 56 N. W. 35, 21 L. R. A. 232, 40 Am. St. Rep. 333; In re Walker, 61 Neb. 803, 86 N. W. 510; Rutledge v. Krauss, 73 N. J. Law, 397, 63 Atl. 988—all of which go upon the ground that it was settled in the Lascelles Case that no condition or limitations are imposed upon the jurisdiction or authority of the state to which a fugitive is returned, and that the rule that one coming into a state voluntarily as a witness or party to a suit is free from civil process has no application because the principles upon which that rule is founded are entirely lacking. It is settled that this distinction between. parties voluntarily entering the state and those who come involuntarily prevails in this state, and that cases where the presence of the defendant has been secured by extradition proceedings furnish no exception. Netograph Mfg. Co. v. Scrugham, 197 N. Y. 377, 90 N. E. 962, 27 L. R. A. (N. S.) 333, 134 Am. St. Rep. 886.

[2] The present attempt to assail the good faith of the extradition proceedings as a means for attacking the commitment cannot succeed. The facts set forth in the petition in this regard consist entirely of statements alleged to have been made by two attorneys who represented the state in proceedings before the Immigration Department of the Dominion of Canada at a hearing on an application to that government for the deportation of Thaw in September, 1913, before Thaw entered the state of New Hampshire and before his indictment for the crime upon which he was subsequently extradited from that state. When these proceedings failed or were abandoned as a means of retaking Thaw, and when he had thereafter been lawfully indicted and upon that indictment extradition proceedings had been taken and accomplished, and Thaw had been tried upon such indictment, I see no justification for questioning the good faith of these proceedings (assuming they were the subject of inquiry), because of what some representative of the state may have said under the circumstances disclosed. But I do not think that any question of good faith in securing the extradition of Thaw is in any way material or may enter into our consideration. As I have shown, there are no limitations on the right of the executive to grant extradition save such as are imposed by the Constitution.

In Kentucky v. Dennison, 24 How. 66, 16 L. Ed. 717, it was held that the Constitution imposed no more than a moral duty upon the state to grant or recognize warrants for extradition, the issuance or refusal of which could not be coerced by the courts. In Adriance v. Lagrave, supra, the court held that the question of the "good faith" of the extraditing state was one solely between the two governments and was a political and not a judicial question. I should be willing to accept that principle as applicable to this case and to place my opinion on the ground that, inasmuch as there was no limitation upon the right of the executive to grant extradition in proper cases, the court will not inquire into the motives which guided the chief magistrate of the state when executing the functions of his office. Such is the holding of the highest federal court (Drew v. Thaw, 235 U. S. 432, 439, 35 Sup. Ct. 137, 59 L. Ed. ——; Pettibone v. Nichols, 203 U.

S. 192, 203, 27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047); and, although the distinction may be drawn that the question is not one for federal cognizance, I see no reason why the principle of immunity of executive discretion from judicial inquiry is not equally applicable and binding upon us.

[3] I do not think the rule of abuse of judicial process has any application to this case.

Thaw was committed in pursuance of section 454 of the Code of Criminal Procedure, which provides that, where the defense is insanity, the jury, if they acquit on that ground, must so state in their verdict, and thereupon, "if the defendant be in custody and they deem his discharge dangerous to the public safety, * * * the court must * * * order him to be committed to the state lunatic asylum until he becomes sane." If after such commitment he acquires his reason, the laws provide for the ascertainment of that fact and for his discharge. The jurisdiction of the state over the persons of lunatics, whether citizens or aliens, is based upon two grounds: (1) Its duty to protect the community from apprehended injury; and (2) the duty to protect those of unsound mind as a class incapable of protecting themselves. In re Colah, 3 Daly, 529; Sporza v. German Sav. Bank, 192 N. Y. 8, 84 N. E. 406. The authority to commit is one of the police powers of the state. Sporza v. German Sav. Bank, supra; People ex rel. Peabody v. Chandler, 133 App. Div. 159, 117 N. Y. Supp. 322, affirmed 196 N. Y. 525, 89 N. E. 1109, 25 L. R. A. (N. S.) 946. Had Thaw become insane after his return to this state, there can be no doubt of the right of the state to place him in confinement upon due proceedings to that end. The situation here is that he had theretofore been lawfully determined to be insane, and, when the motion below was made, his commitment upon such determination was a valid outstanding process commanding the very sheriff now holding him in custody to convey him to the hospital, where he was to be kept until "discharged by due course of law." Such "due course of law" may be invoked and pursued only as prescribed by law, and in no other manner. It necessarily follows that, in retaking Thaw into his custody pursuant to said commitment, the sheriff was acting under due process of law. The motives which may have influenced those who procured Thaw's return to the state have nothing to do with the case, and he may be discharged from custody only when "by due course of law" he shall have been ascertained to be sane and the prior adjudication of insanity shall have been superseded.

For these reasons, the order appealed from should be affirmed. Settle order on notice.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur. INGRAHAM, P. J., concurs in result.

SCOTT, J. I concur in the affirmance of the order appealed from because in my opinion the appeal presents no question for judicial cognizance. The appellant is in this state, and there is outstanding a perfectly valid order for his restraint as a person of unsound mind. People ex rel. Peabody v. Chandler and Lamb, 133 App. Div. 159, 117 N. Y. Supp. 322, affirmed 196 N. Y. 525, 89 N. E. 1109, 25 L. R. A.

(N. S.) 946. How he came here is none of our concern. Even if he had been kidnapped and brought back in defiance of law, he would have had no standing to insist that he be returned to the place from which he came. Lascelles v. Georgia, 148 U. S. 537, 13 Sup. Ct. 687, 37 L. Ed. 549. But it is urged that in some vague and undefined way it would be a breach of good faith on the part of the state of New York to retain him under the commitment to Matteawan, when he was brought back to the state for the purpose of being tried for a crime. Good faith to whom? Not to the appellant, because he came back involuntarily, and was subject to no promise or inducement. Not to the state of New Hampshire, because it was the duty of that state to return him to answer for the crime for which he had been indicted. It is true that this duty is termed a moral one because there is no machinery known to the law to enforce it, but it is none the less a duty enjoined by the federal Constitution. In honoring the requisition of the Governor of this state, therefore, the Governor of New Hampshire did no more than perform a public duty enjoined upon him by the supreme law of the land. This state thereby assumed no implied obligation to return appellant to New Hampshire when his trial should have ended, and no express obligation is suggested. And even if there had been an express condition attached to his rendition it is doubtful whether it would have had any force or validity. Lascelles v. Georgia, supra, at page 543 of 148 U. S., 13 Sup. Ct. 687, 37 L. Ed. 549. It may be that the state would be well rid of so troublesome a guest, and that in view of his acquittal it is to be regretted that having once left it he was brought back, but that is not a matter for judicial consideration. All we have to consider is his right to be discharged from the lawful, outstanding commitment to Matteawan, and it seems to me clear that he had no such right. Certainly, if we were to release him from the restraining effect of the commitment, we have no power to compel his deportation, but must release him unconditionally, leaving it to him to determine whether he will go or stay.

McLAUGHLIN and CLARKE, JJ., concur.