## Commonwealth ex rel. Orlowski v. Pascoe.

*Habeas corpus—Capias where relator is in custody—Extradition.*

Where the relator was in prison serving a term upon a conviction for larceny, and the party from whom the money had been stolen, before the expiration of the term of imprisonment, issued a *capias* for the recovery of the money taken, the relator is not exempt from service of process against him, and is not entitled to be discharged on the expiration of his term, although he was brought into the jurisdiction from another state by extradition proceedings.

*Habeas corpus* to secure a discharge from imprisonment. C. P. Northampton Co., April T., 1922, No. 70.

*Asher Seip* and *John Weinberg* (of the Passaic, New Jersey, Bar), for relator.

*Smith, Paff & Laub*, for defendant.

STEWART, P. J., March 22, 1922.—This was a writ of *habeas corpus*. From the petition, answer and testimony it appeared that the relator had been sentenced to the Northampton County Prison for a period of three years upon a conviction for larceny. On the day before his sentence expired, the party from whom the money had been stolen issued a *capias* for the recovery of the money, and served the relator while still in prison. It also appeared that the relator was a resident of Passaic, New Jersey, and that he had been brought from that state by extradition for trial for larceny. His contention now is

that, having been extradited for that offence, he cannot be held on civil process, and that he should be allowed an opportunity to return to Passaic. We have carefully examined many decisions of the highest courts upon this subject, and feel that the remarks of Mr. Justice Werner in Netograph Manuf. Co. *v.* Scrugham, 197 N. Y. Reps. 377, where it was held, "It is in furtherance of the policy of the law and the due administration of justice that suitors and witnesses from abroad are privileged from liability to other criminal and civil prosecution, *eundo, morando, et redeundo;* but persons actually in custody under criminal process are not exempt from service of process in civil suits," apply to the present case. He there said: "This question, based upon the undisputed facts of this record, is very narrow, but it relates to a subject which has for centuries engaged the attention of common law courts under every conceivable variety of circumstances. Volumes of opinions have been written in which one can find all sorts of conflicting decisions and almost any *dictum* that one may be looking for. The ease with which the writer of an opinion upon even the simplest phase of this subject could drift into a general dissertation upon it is nicely illustrated in the voluminous note to Mullen *v.* Sanborn (a Maryland case reported in 25 L. R. A. 721), where the industrious author has gathered the cases from almost every state in the Union and from England." Notwithstanding this opinion, the subject again came up before the New York court in In re Thaw, 152 N. Y. Supp. 771, where Mr. Justice Hotchkiss said: "Prior to the Lascelles case, in several states it had been decided that an extradited person was not subject to arrest on civil process until he had had a reasonable opportunity to return to the state which had surrendered him. The decisions to this effect cited to us by the learned appellant are In re Cannon, 47 Mich. 481, 11 N. W. Repr. 280 (1882); Compton, Ault & Co. *v.* Wilder, 40 Ohio St. 130 (1883), and Moletor *v.* Sinnen, 76 Wis. 308, 44 N. W. Repr. 1099, 7 L. R. A. 817, 20 Am. St. Rep. 71 (1890). In the Ohio case the decision went on the ground of fraudulent abuse of process by an individual who had procured the extradition proceedings to be instituted. The Wisconsin case seems to have been decided on the theory that a defendant brought within a state by criminal process after acquittal is exempt from civil process for a reasonable time thereafter to permit him to leave the state, the court holding that in this respect the rule was the same as in the case of a suitor voluntarily coming into the state. The Michigan case went on the same ground, and also held that the exemption extended to crimes other than those on which the extradition was based. Since the Lascelles case, however, all of the decisions to which we are cited held that an extradited fugitive is not exempt from civil process in the state to which he has been returned: Reid *v.* Ham, 54 Minn. 305, 56 N. W. Repr. 35, 21 L. R. A. 232, 40 Am. St. Rep. 333; In re Walker, 61 Neb. 803, 86 N. W. Repr. 510; Rutledge *v.* Krauss, 73 N. J. L. Reps. 397, 63 Atl. Repr. 988—all of which go upon the ground that it was settled in the Lascelles case that no condition or limitations are imposed upon the jurisdiction or authority of the state to which a fugitive is returned, and that the rule that one coming into a state voluntarily as a witness or party to a suit is free from civil process has no application because the principles upon which that rule is founded are entirely lacking. It is settled that this distinction between parties voluntarily entering the state and those who come involuntarily prevails in this state, and that cases where the presence of the defendant has been secured by extradition proceedings furnish no exception." The two Supreme Court cases referred to in that opinion are United States *v.* Rauscher, 119 U. S. 407, and Lascelles *v.* State of Georgia, 148 U. S. 537. When the first case was decided, it seems to have confused

2 D. & C.

### Commonwealth ex rel. Orlowski v. Pascoe.

even the best of judges, but the latter case pointed out the difference between the two. That difference is simply that the rule as contended for by the relator would apply where a party was extradited from a foreign country which had a treaty with the United States, but does not apply where he was extradited from one state to another. The matter is very forcibly and clearly expressed by Mr. Justice Fort in Rutledge et al. v. Krauss, 73 N. J. L. Reps. 397, in one of the best considered opinions that we have studied. He said as follows: "The contention is that a person brought into this state from another state upon a criminal requisition is, while confined on the charge and until he have a reasonable opportunity to leave the state after discharge, privileged from arrest on civil process. There appears to us to be no reason founded in law, public policy or private rights on which to base such a rule. A fugitive from justice, returned to the state from whence he has fled after committing the offence, is not in a position to say he should not answer for his acts done or obligations contracted when previously within the state. The exception to this statement, of course, should be when the party is brought into the state by any fraudulent act or conduct on the part of the person who is seeking to prosecute the action against him after he arrives here. Of course, in cases of extradition of subjects or citizens of foreign countries, where to hold a person extradited for any other crime than that for which he was extradited is in violation of treaty obligations, the rule is different. There the sovereignty of the surrendering nation intervenes, and the courts hold that such a citizen or subject so surrendered, pursuant to treaty provision, is only liable for the single offence for which he was surrendered: 12 Am. & Eng. Ency. of Law, 597b; United States v. Rauscher, 119 U. S. 407; Adriance v. Lagrave, 59 N. Y. 110. But such should not be the rule between the states of this Republic. All residents of each state are citizens of the United States, and the executive of one state is charged with a duty to surrender a fugitive from justice from another state found in his state, upon the requisition of the executive of the state from whence he has fled, if the obligation therefor conforms to the Act of Congress governing the matter, and when such a fugitive is thus returned, without fraud or other wrongful act on the part of the public prosecutor or other representative of the state, he may be indicted for and convicted of other offences than those upon which he was extradited while he is still under the charge upon which he was extradited: Com. v. Wright, 158 Mass. 149; Lascelles v. State of Georgia, 148 U. S. 537; People v. Cross, 135 N. Y. 536. And we can see no principle of justice, founded in reason, for protecting such an extradited person from a civil action brought by any suitor of the state from whence he fled while he is within the jurisdiction of the courts of that state, unless such suitor has been guilty of some wrongful or fraudulent act or conduct leading up to the extradition." That opinion clearly states what might be called the exceptions to the rule. That branch of the subject is very fully discussed by Judge Campbell in Com. v. Daniel, 4 Clark, 49, and by President Judge Barratt in Philadelphia Wrecking and Contracting Co. v. Goldfarb, 27 Dist. R. 422. While there is no extended discussion of the subject, the matter would seem to be passed on by our Supreme Court in Wood v. Boyle, 177 Pa. 620. The facts in that case were that one Wood, residing in Warren County, Pa., charged the defendant, residing in Venango County, Pa., with criminal libel. The defendant was arrested and tried in Warren County. On Dec. 6, 1894, he was acquitted. On the morning of the 7th he entered court in order that he might be discharged, and was taken into custody by the sheriff on a *capias*. Application was made to the court for his discharge, which was refused. Mr. Jus-

tice Green, in discussing the subject, said, on page 632, as follows: "It is very doubtful whether a question of privilege in the service of the writ can be considered in error after a trial on the merits. But if it can, the great preponderance of authority is that the defendant in a criminal case is not privileged from arrest on civil process, while attending court, to answer a criminal charge. There are a few contrary decisions in the lower courts, but none in this court, nor in any other court of last resort, English or American, to which we have been referred. In the case of Key v. Jetto, 1 Pitts. Reps. 117, Judge Woodward, sitting at *nisi prius* in 1854, held that the privilege did not extend to defendants in criminal cases. In 1 Am. & Eng. Ency. of Law, 724, there is an extensive collection of decisions of both English and American courts of last resort, in all of which it is held that the privilege did not extend to defendants in criminal cases. We see no good reason for departing from the current of authority on this subject." Even without the authority of that case, we would hold that the relator's position is not well taken, for reasons set forth in the well considered opinions that we have quoted from. However, Wood v. Boyle, in our judgment, does overrule Garr v. Kessler, 5 Northamp. Co. Repr. 228; Brass v. Vandegrift, 23 W. N. C. 270; In re Barton, 3 Pa. C. C. Reps. 334, and Lyons v. Mann, 31 Pa. C. C. Reps. 24; 14 Dist. R. 104. In the last case there is a very elaborate opinion by Judge McMichael, and he seems to hold that Wood against Boyle does not decide the question, but we are of opinion that upon the facts as we have them it does decide the question, and we so held in Com. v. Orowski, 17 Northamp. Co. Repr. 181; 20 Dist. R. 834. Further discussion is unnecessary.

And now, March 22, 1922, after hearing had, the relator is remanded to the Northampton County Prison to answer the demand of the writ No. 61, April Term, 1922, Court of Common Pleas of Northampton County, suit of Frank Beeruk v. Ignatz Orlowski et al.     From Henry D. Maxwell, Easton, Pa.