## LASCELLES v. GEORGIA.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 1262.   Argued March 16, 1893. — Decided April 3, 1893.

A fugitive from justice who has been surrendered by one State of the
Union to another State, upon requisition charging him with the commis-
sion of a specific crime, has, under the Constitution and laws of the
United States, no right, privilege or immunity to be exempt from indict-
ment and trial, in the State to which he is returned, for any other or
different offence from that designated in the requisition, without first
having an opportunity to return to the State from which he was extradited.

THIS case was brought here by writ of error to the Supreme
Court of the State of Georgia. The single federal question
presented by the record, and relied on to confer upon this
court the jurisdiction to review the judgment of the Supreme
Court of Georgia, complained of by the plaintiff in error, was
whether a fugitive from justice who has been surrendered by
one State of the Union to another State thereof upon requisi-
tion, charging him with the commission of a specific crime,
has, under the Constitution and laws of the United States, a
right, privilege or immunity to be exempt from indictment
and trial in the State to which he is returned, for any other or
different offence than that designated and described in the
requisition proceedings, under which he was demanded by and
restored to such State, without first having an opportunity to
return to the State from which he was extradited.

The facts of the case on which this question is raised were
briefly these : In July, 1891, two indictments were regularly
found by the grand jury of the county of Floyd, State of
Georgia, against the plaintiff in error under the name of
Walter S. Beresford, which respectively charged him with the
offence " of being a common cheat and swindler," and with
the crime of " larceny after trust delegated," both being crim-
inal acts by the laws of Georgia, and alleged to have been
committed in the county of Floyd. At the time these indict-

ments were found the plaintiff in error was residing in the State of New York. In September, 1891, the governor of the State of Georgia made a requisition on the governor of the State of New York for the arrest and surrender of the plaintiff in error to designated officials of the former State, naming him, as he was named in the indictment, Walter S. Beresford. In the requisition, as well as in the warrant for his arrest, the offences for which his rendition was demanded were stated and designated as charged in the indictment. After being arrested, in pursuance of the warrant, he was duly delivered to the agent of the State of Georgia, was brought to the county of Floyd in said State, and there delivered to the sheriff of the county, by whom he was detained in the county jail. While so held, and before trial upon either of the indictments on which the requisition proceedings were based, the grand jury of the county, on October 6, 1891, found a new indictment against him for the crime of forgery, naming him therein as Sidney Lascelles, which was his true and proper name. Thereafter he was put upon his trial in the Superior Court of the county of Floyd upon this last indictment. Before arraignment he moved the court to quash said indictment "on the ground that he was being tried for a separate and different offence from that for which he was extradited from the State of New York to the State of Georgia, without first being allowed a reasonable opportunity to return to the State of New York." This motion was overruled and he was put upon trial. Thereupon he filed a special plea setting forth the foregoing facts, and averring that he could not be lawfully tried for a separate and different crime from that for which he was extradited. This plea was overruled, and, having been put upon his trial under the indictment, he was found guilty of the offence charged. His motion for a new trial being overruled and refused, he filed a bill of exceptions, and carried the case to the Supreme Court of Georgia, the court of highest and last resort in that State, before which he again asserted his exemption from trial upon the indictment, upon the grounds stated in his motion to quash and in his special plea, but the Supreme Court of Georgia sustained the action of the lower

court therein, and in all respects affirmed the judgment of the Superior Court.

*Mr. W. W. Vandiver,* (with whom was *Mr. L. A. Dean* on the brief,) for plaintiff in error.

There is no natural or inherent right in one State to demand of another a fugitive from justice. The power to extradite a person for crime is purely statutory, and what is not authorized or required by a fair construction of the statute, cannot be presumed. Without the provisions of the Constitution of the United States for delivering up fugitives from justice, and the enactments of Congress in furtherance thereof, the State would be powerless to recover her fugitive criminals from other States whence they had fled. Each State of the Union is an asylum to its citizens and inhabitants against the demands of all other States or countries except to meet the provisions of the Constitution of the United States, the laws enacted thereunder, and the treaties with other nations.

Without strict compliance with the provisions of law, no person can be delivered over to another State for trial for a crime committed in such other State. Section 5278, Rev. Stat., requires that before a fugitive is delivered up, a copy of the indictment or affidavit charging the party demanded with having committed treason, felony or other crime shall be certified by the governor of the demanding State and presented to the governor upon whom the demand is made. The Constitution of the United States, Article 4, Section 2, provides that "upon demand," etc., the fugitive shall "be delivered up to be removed to the State having jurisdiction of *the* crime." Thus considering the Constitution and the statute together, it seems clear that before extradition can be had a particular crime must be set forth as a basis for such extradition. In support of this contention the following authorities are confidently referred to: Spear on Extradition, (1st. ed.,) 349; *Ex parte McKnight,* 48 Ohio St. 588; *Kansas* v. *Hall,* 40 Kansas, 338; *In re Canon,* 47 Michigan, 481; *Compton* v. *Wilder,* 40 Ohio St. 130; *Commonwealth* v. *Hawes,* 13 Bush, 697; *United*

*States* v. *Rauscher*, 119 U. S. 407; *In re Fitton*, 45 Fed. Rep. 471.

*Mr. D. B. Hamilton* and *Mr. J. M. Terrell* filed a brief for defendant in error; but the court declined to hear them.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

The plaintiff in error prosecutes the present writ of error to review and reverse this decision of the Supreme Court of Georgia, claiming that in its rendition a right, privilege or immunity secured to him under the Constitution and laws of the United States, specially set up and insisted on, was denied. The particular right claimed to have been denied is the alleged exemption from indictment and trial except for the specific offences on which he had been surrendered.

The question presented for our consideration and determination is whether the Constitution and laws of the United States impose any such limitation or restriction upon the power and authority of a State to indict and try persons charged with offences against its laws, who are brought within its jurisdiction under interstate rendition proceedings. While cases involving questions of international extradition and interstate rendition of fugitives from justice have frequently been before this court for decision, this court has not passed upon the precise point here presented. The second clause of Section 2, Article 4 of the Constitution of the United States declares that "a person charged in any State with treason, felony or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." To carry this provision into effect Congress passed the act of February 12, 1793, 1 Stat. 392, c. 7, the first and second sections of which have been re-enacted and embodied in sections 5278 and 5279 of the Revised Statutes of the United States, prescribing the methods of procedure on the part of

the State demanding the surrender of the fugitive, and providing that "it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear," and providing further that the agent "so appointed, who shall receive the fugitive into his custody, shall be empowered to transport him to the State or Territory from which he has fled."

Upon these provisions of the organic and statutory law of the United States rest exclusively the right of one State to demand, and the obligation of the other State upon which the demand is made to surrender, a fugitive from justice. Now, the proposition advanced on behalf of the plaintiff in error in support of the federal right claimed to have been denied him is, that, inasmuch as interstate rendition can only be effected when the person demanded as a fugitive from justice is duly charged with some particular offence, or offences, his surrender upon such demand carries with it the implied condition that he is to be tried *alone* for the designated crime, and that in respect to all offences other than those specified in the demand for his surrender, he has the same right of exemption as a fugitive from justice extradited from a foreign nation. This proposition assumes, as is broadly claimed, that the States of the Union are independent governments, having the full prerogatives and powers of nations, except what have been conferred upon the general government, and not only have the right to grant, but do, in fact, afford to all persons within their boundaries an asylum as broad and secure as that which independent nations extend over their citizens and inhabitants. Having reached, upon this assumption or by this process of reasoning, the conclusion that the same rule should be recognized and applied in interstate rendition as in foreign extradition of fugitives from justice, the decision of this court in *United States* v. *Rauscher*, 119 U. S. 407 *et seq.*, is invoked as a controlling authority on the question under consideration.

If the premises on which this argument is based were sound, the conclusion might be correct. But the fallacy of the argument lies in the assumption that the States of the Union occupy towards each other, in respect to fugitives from justice, the relation of foreign nations, in the same sense in which the general government stands towards independent sovereignties on that subject; and in the further assumption that a fugitive from justice acquires in the State to which he may flee some state or personal right of protection, improperly called a right of asylum, which secures to him exemption from trial and punishment for a crime committed in another State, unless such crime is made the special object or ground of his rendition. This latter position is only a restatement, in another form, of the question presented for our determination. The sole object of the provision of the Constitution and the act of Congress to carry it into effect is to secure the surrender of persons accused of crime, who have fled from the justice of a State, whose laws they are charged with violating. Neither the Constitution, nor the act of Congress providing for the rendition of fugitives upon proper requisition being made, confers, either expressly or by implication, any right or privilege upon such fugitives under and by virtue of which they can assert, in the State to which they are returned, exemption from trial for any criminal act done therein. No purpose or intention is manifested to afford them any immunity or protection from trial and punishment for any offences committed in the State from which they flee. On the contrary, the provision of both the Constitution and the statutes extends to *all* crimes and offences punishable by the laws of the State where the act is done. *Kentucky* v. *Dennison*, 24 How. 66, 101, 102; *Ex parte Reggel*, 114 U. S. 642.

The case of *United States* v. *Rauscher*, 119 U. S. 407, has no application to the question under consideration, because it proceeded upon the ground of a right given impliedly by the terms of a *treaty* between the United States and Great Britain, as well as expressly by the acts of Congress in the case of a fugitive surrendered to the United States by a foreign nation. That treaty, which specified the offences

that were extraditable, and the statutes of the United States passed to carry it and other like treaties into effect, constituted the supreme law of the land, and were construed to exempt the extradited fugitive from trial for any other offence than that mentioned in the demand for his surrender. There is nothing in the Constitution or statutes of the United States in reference to interstate rendition of fugitives from justice which can be regarded as establishing any compact between the States of the Union, such as the Ashburton treaty contains, limiting their operation to particular or designated offences. On the contrary, the provisions of the organic and statutory law embrace crimes and offences of every character and description punishable by the laws of the State where the forbidden acts are committed. It is questionable whether the States could constitutionally enter into any agreement or stipulation with each other for the purpose of defining or limiting the offences for which fugitives would or should be surrendered. But it is settled by the decisions of this court that, except in the case of a fugitive surrendered by a foreign government, there is nothing in the Constitution, treaties or laws of the United States which exempts an offender, brought before the courts of a State for an offence against its laws, from trial and punishment, even though brought from another State by unlawful violence, or by abuse of legal process. *Ker* v. *Illinois*, 119 U. S. 436, 444 ; *Mahon* v. *Justice*, 127 U. S. 700, 707, 708, 712, 715; *Cook* v. *Hart*, 146 U. S. 183, 190, 192.

In the case of *Mahon* v. *Justice*, 127 U. S. 700, a fugitive from the justice of Kentucky was kidnapped in West Virginia and forcibly carried back to Kentucky, where he was held for trial on a criminal charge. The governor of West Virginia demanded his restoration to the jurisdiction of that State, which, being refused, his release was sought by *habeas corpus*, and it was there contended that, under the Constitution and laws of the United States, the fugitive had a right of asylum in the State to which he fled, which the courts of the United States should recognize and enforce, except when removed in accordance with regular proceedings author-

ized by law. Instead of acceding to this proposition, this court said : " But the plain answer to this contention is that the *laws* of the United States do not recognize any such right of asylum as is here claimed, on the part of the fugitive from justice in any State to which he has fled; nor have they, as already stated, made any provision for the return of parties, who, by violence and without lawful authority, have been abducted from a State." And the court further said: " As to the removal from the State of the fugitive from justice in a way other than that which is provided by the second section of the fourth article of the Constitution, which declares that 'a person charged in any State with treason, felony or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime,' and the laws passed by Congress to carry the same into effect — it is not perceived how that fact can affect his detention upon a warrant for the commission of a crime within the State to which he is carried. The jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it. There are many adjudications to this purport cited by counsel on the argument, to some of which we will refer." (pp. 707, 708.) After reviewing a number of cases on this question, the court proceeded: " Other cases might be cited from the same courts holding similar views. There is, indeed, an entire concurrence of opinion as to the ground upon which a release of the appellant in the present case is asked, namely, that his forcible abduction from another State, and convey-ance within the jurisdiction of the court holding him, is no objection to the detention and trial for the offence charged. They all proceed upon the obvious ground that the offender against the law of the State is not relieved from liability because of personal injuries received from private parties, or because of indignities committed against another State. It would indeed be a strange conclusion, if a party charged with a criminal offence could be excused from answering to

the government whose laws he had violated, because other parties had done violence to · him, and also committed an offence against the laws of another State." (p. 712.) The same principle was applied in the case of *Ker* v. *Illinois*, 119 U. S. 436.

If a fugitive may be kidnapped or unlawfully abducted from the State or country of refuge, and be, thereafter, tried in the State to which he is forcibly carried, without violating any right or immunity secured to him by the Constitution and laws of the United States, it is difficult to understand upon what sound principle can be rested the denial ·of a State's authority or jurisdiction to try him for another or different offence than that for which he was surrendered. If the fugitive be regarded ·as not lawfully within the limits of the State in respect to any other crime than the one on which his surrender was effected, still that fact does not defeat the jurisdiction of its courts to try him for other offences, any more than if·he had been brought within such jurisdiction forcibly and without any legal process whatever.

We are not called upon in the present case to consider what, if any, authority the surrendering State has over the subject of the fugitive's rendition, beyond ascertaining that he is charged with crime in the State from which he has fled, nor whether the States have any jurisdiction to legislate upon the subject, and we express no opinion on these questions. To apply the rule of international or foreign extradition, as announced in *United States* v. *Rauscher*, 119 U. S. 407, to interstate rendition .involves the confusion of two essentially different things, which rest upon entirely different principles. In the former the extradition depends ,upon treaty contract or stipulation, which rests upon good faith, and in respect to which the sovereign upon whom the demand is made can exercise discretion, as well as investigate the charge on which the surrender is demanded, there being no rule of comity under and by virtue of which independent nations are required or expected to withhold from fugitives within their jurisdiction the right of asylum. In the matter of interstate rendition, however, there is the binding force and obligation, not of

contract, but of the supreme law of the land, which imposes no conditions or limitations upon the jurisdiction and authority of the State to which the fugitive is returned.

There are decisions in the state courts and in some of the lower federal courts which have applied the rule laid down in *United States* v. *Rauscher*, *supra*, to interstate rendition of fugitives under the Constitution and laws of the United States, but in our opinion they do not rest upon sound principle, and are not supported by the weight of judicial authority.

The cases holding the other and sounder view, that a fugitive from justice surrendered by one State upon the demand of another, is not protected from prosecution for offences other than that for which he was rendered up, but may, after being restored to the demanding State, be lawfully tried and punished for any and all crimes committed within its territorial jurisdiction, either before or after extradition, are the following : *In re Noyes*, 17 Albany L. J. 407 ; *Ham* v. *The State*, [Texas,] 4 Tex. App. 645 ; *State ex rel. Brown* v. *Stewart*, 60 Wisconsin, 587 ; *Post* v. *Cross*, 135 N. Y. 536 ; *Commonwealth* v. *Wright*, [Sup. Court of Mass.,] 33 N. E. Rep. 82 ; and *In re Miles*, 52 Vermont, 609.

These authorities are followed by the Supreme Court of Georgia in the clear opinion pronounced by Lumpkin, Justice, in the present case.

The highest courts of the two States immediately or more directly interested in the case under consideration hold the same rule on this subject. The plaintiff in error does not bear in his person the alleged sovereignty of the State of New York, from which he was remanded, *Dow's Case*, 18 Penn. St. 37, but if he did, that State properly recognizes the jurisdiction of the State of Georgia to try and punish him for any and all crimes committed within its territory. But aside from this, it would be a useless and idle procedure to require the State having custody of the alleged criminal to return him to the State by which he was rendered up in order to go through the formality of again demanding his extradition for the new or additional offences on which it desired to prosecute him. The Constitution and laws of the United States impose no

such condition or requirement upon the State. Our conclusion is that, upon a fugitive's surrender to the State demanding his return in pursuance of national law, he may be tried in the State to which he is returned for any other offence than that specified in the requisition for his rendition, and that in so trying him against his objection no right, privilege or immunity secured to him by the Constitution and laws of the United States is thereby denied.

' It follows, therefore, that the judgment in the present case should be

*Affirmed.*