## EX PARTE MOELLER.

*Criminal law — Extradition — Fugitive may be tried for different offense, when.*

A person surrendered to the authorities of this state by another state on extradition proceedings can be held to answer for a different crime from the one upon which his extradition was obtained.

(Decided March 29, 1921.)

IN HABEAS CORPUS: Court of Appeals for Hamilton county.

*Mr. Edward M. Ballard,* for petitioner.

*Mr. Louis H. Cappelle,* prosecuting attorney, and *Mr. Charles H. Elston,* assistant prosecuting attorney, contra.

HAMILTON, P. J. Upon the application of Ferdinand Moeller, a prisoner in the county jail of Hamilton county, in the custody of the sheriff of that county, who claims he is unlawfully deprived of his

liberty, a writ of *habeas corpus* was issued to inquire into his detention.

It appears that on or about the 29th day of December, 1920, Moeller was brought into the state of Ohio from the state of Kentucky, in extradition proceedings, to answer to a charge of shooting with intent to kill one Kline, which crime was alleged to have been committed on the 23d day of December, 1920. On the 25th day of February, 1921, the charge against Moeller of shooting to kill was dismissed in the municipal court of the city of Cincinnati, but Moeller was not released from custody and was not given an opportunity to return to the state of Kentucky. It appears that instead of being released Moeller was indicted by the grand jury of Hamilton county on a charge of robbery, preferred against him, committed on the person of one Gavin Douglas on the 18th day of December, 1920, a different crime from that for which he had been extradited. For this crime he was arraigned, and in answer to a request as to his plea to the indictment he stood mute and a plea of "not guilty" was entered. He was thereupon tried upon the charge of robbery, and was convicted, and as a result is now in the custody of the sheriff, as above stated.

The question before the court is: Can a person surrendered to the authorities of this state by another state or territory on extradition proceedings be held to answer for a different crime from the one upon which his extradition was obtained? This question was squarely before the supreme court of Ohio in the case of *Ex parte Hiram P. McKnight,* 48 Ohio St., 588, decided November 17, 1891, and the decision in that case is that he cannot be so held.

The same question arose in the supreme court of the United States in the case of *Lascelles* v. *Georgia,* 148 U. S., 537, decided April 3, 1893, which court held directly to the contrary, and says in the syllabus:

"A fugitive from justice who has been surrendered by one State of the Union to another State, upon requisition charging him with the commission of a specific crime, has, under the Constitution and laws of the United States, no right, privilege or immunity to be exempt from indictment and trial, in the state to which he is returned, for any other or different offense from that designated in the requisition, without first having an opportunity to return to the state from which he was extradited."

The right of extradition is contained in the second clause of Section 2, Article IV of the Constitution of the United States, which declares that:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

To carry this provision into effect, congress passed an act embodied in Sections 5278 and 5279, Revised Statutes of the United States (Barnes's Fed. Code, Sections 9633 and 9634; U. S. Comp. Stat., Sections 10126 and 10127), prescribing the method of procedure on the part of the state demanding the surrender of the fugitive. The question has been frequently before the supreme court of the United States on the question of international

extradition, where it was uniformly held that the fugitive could only be held to answer to the charge contained in the extradition proceeding, on the ground that this was in compliance with treaties between nations and the good faith and comity existing between the nations.

The court in the *McKnight case* seems to have rested its decision upon this rule on international extradition, stating in the opinion, at page 602:

"We think, the reasons controlling the decisions of the *Vanderpool* and *Rauscher cases,* and the grounds upon which those decisions rest, so far as they relate to the question before us, apply with equal force to interstate extraditions."

And the court adds, in substance, that the statute of Ohio providing for the surrender by the executive of this state of a fugitive from justice, and the procedure to carry out the demand provided by the statute, add force to such construction. That the same rule does not apply is flatly decided by the supreme court of the United States in the *Lascelles case*. The court in the opinion in that case says, at page 543:

"There is nothing in the Constitution or statutes of the United States in reference to interstate rendition of fugitives from justice which can be regarded as establishing any compact between the States of the Union, such as the Ashburton treaty contains, limiting their operation to a particular or designated offences. On the contrary, the provisions of the organic and statutory law embrace crimes and offenses of every character and description punishable by the laws of the State where the forbidden acts are committed."

The United States Constitution providing for extradition, and the Act of Congress giving effect thereto, are the supreme law of the land, and on questions arising thereunder it is the duty of this court to follow the court of last resort having the power to construe that supreme law.

The holding in the *Lascelles case* is that the international rule of the right of asylum does not apply to interstate renditions, and that the fugitive may be tried in the state to which he is returned for any other or different offense from that specified in the requisition for his rendition, and that in so trying him against his objection, no right, privilege or immunity, secured to him by the constitution and laws of the United States, is thereby denied. The *Lascelles case* having been heard and decided subsequent to the *McKnight case,* and such cases being reviewable in the United States supreme court, we will follow that decision.

Counsel in the case before us seeks to make the point that in the *Lascelles case* the court stated that it was not called upon to consider what, if any, authority the surrendering state had to legislate upon the subject and that it therefore expressed no opinion on that question; that the inference from the provisions of the statute of Ohio is to the effect that the extradited person cannot be held for any other than the crime charged in the proceeding on extradition; and that the statute so inferring, and the supreme court in the *Lascelles case* not having decided the right of the state to legislate upon the subject, the *McKnight case* is controlling.

An examination of the Ohio statute with reference to the question leads us to the conclusion that

the Ohio statutes go only to the question of procedure in extradition for the crime charged, and do not in any way affect the jurisdiction of the state as to other crimes. The court in the *McKnight case* only made reference to the Ohio statute as lending force to the giving of the same rule of construction in interstate extradition as applied to international extradition. If the statutes of Ohio provided in terms that one brought into the state by extradition to answer to a certain charge could not be held to answer to any other charge, then the constitutionality of that provision would be before us, but since, as above stated, the statutes only bear on the procedure in interstate rendition, and not on the jurisdiction over other crimes, not charged in the extradition proceedings, the question is not here.

The judgment, therefore, is that the prisoner is not unlawfully restrained, and he is hereby remanded to the custody of the sheriff.

*Prisoner remanded to custody.*

CUSHING and BUCHWALTER, JJ., concur.