Common Pleas Court for Hamilton County.

KNIPP v. CITY OF CINCINNATI.

Decided March 15, 1932.

*Chauncey D. Pichel,* for plaintiff in error.
*Francis T. Bartlett,* Ass't. City Pros., for defendant in error.

DARBY, J.

The plaintiff in error was charged in the Municipal Court of Cincinnati with a violation of the ordinance forbidding the unlawful possession of intoxicating liquor.

He was convicted and fined, and brings this action to reverse that judgment.

In the Municipal Court it was claimed that there was no evidence against the defendant which would justify his conviction.

A motion to suppress the evidence taken from his residence was overruled, and the case submitted to the court upon the testimony offered on the motion, supplemented by the evidence of the defendant.

It was the claim of the defendant that his residence was entered by the officer who made the arrest, unlawfully, by force, without a warrant either to arrest the defendant or to search the premises. This claim is established.

Briefly, the claim of the officer was that he was informed that a man was lying on the floor of the defendant's home; that he thereupon went to the home, forced open a window, entered and saw there a man, one Dean, lying on the floor, with a bottle of whisky beside him, and upon going into an adjoining room found beer in bottles and whiskey "boiling" on a stove; the liquor seized at this time is described as "this gallon of moonshine liquor, 90 proof, 45 per cent alcohol, about 75 bottles of beer 2.85 per cent and a ten gallon keg which was boiling on the stove of moonshine liquor." When the city offered to prove that the liquor seized was intoxicating, the defendant admitted that an analysis of the same showed that it was intoxicating. The real reason the officer entered the building was that because he saw steam on the windows he "knew there was something wrong in the place. I was going in to find out why all the steam on the windows."

The officer recognized that he did not have sufficient information to procure a search warrant. On page 5 of the bill of exceptions he stated in answer to a question:

"* * * He asked me whether I had any paper. I told him no, I merely came down to investigate. I locked them up."

To all appearances, the place entered by the officer was a *bona fide* residence of the defendant, and he had no

information to the contrary. He did not go in by means of any door, but climbed in through a window after opening it. The action of the officer in entering the building in this manner, without a warrant, was a trespass. Such action was not in accordance with the law, nor the spirit of the law.

A search of the premises revealed such facts as showed that the building was probably used for the manufacture or preparation of intoxicating liquor and therefore was a shop, instead of a residence within the meaning of the case of *State* v. *Sabo,* 108 O. S., 200, p. 205:

"The mere fact of the manufacture of intoxicating liquor, whether in a cellar, or garret, or any other room of a house, clearly constitutes the dwelling a shop. The Century Dictionary defines the word 'shop' as follows: 'A room or building in which the making, preparing or repairing of an article is carried on, or in which any industry is pursued * * * the place where anything is made; the producing place or source.'"

The testimony is that the gallon of moonshine liquor was boiling upon a gas burner, which seems to bring the case clearly within the above definition of a shop. Therefore it must be held that the place where the arrest and seizure were made was not a *bona fide* residence, but was a shop.

The statutes of Ohio provide when doors may be broken to effect an arrest. Section 13432-14 provides:

*"When making an arrest or executing a warrant* for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door, or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search he is refused admittance, but an officer executing a search warrant shall not enter a house or building not described in the warrant."

General Code Section 6212-27 provides as to the right of entry of buildings and the making of searches of buildings by officers. The same provisions are to be found in the city ordinance, Section 57-2. These sections all

provide as to the manner by which buildings may be entered or search warrants issued and executed.

The court is unable to find any policy on the part of the state to permit officers to search buildings promiscuously without search warrants. The statutes as to search warrants, except as to *bona fide* residences, would be entirely nullified if it should be held that a place which is not a *bona fide* residence is subject to search indiscriminately without a search warrant. To so hold would be contradicted by the concluding clause of Section 6212-27, providing:

"* * * nor shall a search warrant issue to search any other premises not a *bona fide* private residence, except in accordance with the provisions of law as found in Sections 13482-13488 inclusive, of the General Code, so far as same may apply."

The same provision is found in the ordinance.

Sections 13482-13488 of the General Code, provide the means and steps to be taken in the procurement and execution of search warrants, and it would seem clear under the spirit of these laws that the search of the home of the defendant was not legally made.

The question, however, as to the rights of the city in this case would *seem* to have been settled by the case of *Rosansky* v. *State*, 106 O. S., 442. The 4th clause of the syllabus in that case is:

"4. In prosecutions for violation of the prohibition laws of Ohio, where the charge involves unlawful possession of intoxicating liquor, *a seizure of any contraband property by an officer, whether the seizure has been made under process unlawfully procured or without any process*, will not avoid the seizure nor authorize an order by a magistrate for a return of such contraband to the person from whose possession the same was taken, unless the seizure was made in a *bona fide* private residence.

"5. *In such case all such contraband so seized is admissible in evidence upon the part of the state, and collateral inquiry for the purpose of determining its competency may not be made into the manner of its seizure.*"

If that case settled anything, it decided that where contraband (intoxicating liquor *unlawfully possessed*) is seized, with or without process, it is competent evidence to be used on an issue as to the guilt of the possessor.

The case of *State* v. *Sabo,* 108 O. S., 200, is another unlawful possession case involving search and seizure, and in that case the court says on page 206:

"We again refer to the principles declared in the Rosansky case, to the effect that contraband property *wherever found* and *however obtained,* is admissible as competent evidence against the person in whose possession it is found, and the principles declared in that case clearly apply to stills or other 'property designed for the manufacture of liquor intended for use in the violation of law, or which has been so used'. The quoted words are found in Section 6212-16 of the General Code, which declares all such property contraband."

The Rosansky and Sabo cases, *supra,* were referred to with approval by the Supreme Court in the case of *City of Cleveland* v. *Nagle,* 124 O. S., 59, although the particular question here involved was not considered in that case.

It is of interest to note that the decisions in the Rosansky and Sabo cases were by the unanimous Court.

As a result of those decisions, it has been the holding of other courts in this state that an officer, with or without a warrant, may enter a residence which is found not to be a *bona fide* residence as above, or any other building, search the place and seize liquor, and that the evidence seized is admissible and conviction resulting therefrom is legal.

Article I, Section 14 of the Constitution of Ohio protects the homes as well as persons from unlawful search and seizure. It is in these words:

"The right of the people to be secured in their persons, houses, papers and possessions against unreasonable searches and seizure shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person and things to be seized."

The fourth amendment to the United States Constitution is in substance the same as above.

In *United States* v. *Lanza,* 260 U. S. 377, p. 382, the Supreme Court expresses the well understood principle that the fourth amendment above referred to has nothing to do with state prosecutions.

"The Fifth Amendment like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government * * *."

It will be seen that the same Constitutional provision which protects persons from unlawful arrest and search protects houses from the same unlawful measures; and there can be no rational basis for any distinction as between the two. It would seem equally clear that the Legislature is without power to authorize a search and seizure forbidden by the Constitution. But there is justification for the distinction taken in the Rosansky and Sabo cases, where, even on an unlawful search, *contraband property is found.*

*Weeks* v. *United States,* 232 U. S., 383 was a case in which the Fourth Amendment to the Federal Constitution was under consideration, and in the opinion of the Court by Mr. Justice Day is found the following:

"What then is the present case?
"Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits of evidence of crime. This right has been uniformly maintained in many cases. 1 *Bishop on Criminal Procedure,* Section 211; *Wharton Crim,* Pl. & Pr., 8 Ed., 60; *Dillon* v. *O'Brien & Davis,* 16 Cox, C. C., 245. Nor is it the case of testimony offered on the trial, where the court is asked to stop and consider the illegal means by which proofs otherwise competent were obtained, of which we shall have occasion to treat later in this opinion. Nor is it the case of burglars, tools or other proofs of guilt found upon his arrest within the control of the accused."

It is a very trite saying that two wrongs do not make a right. A wrong amounting to a trespass by an officer in making an arrest, does not cancel a crime committed by

one accused. If the officer makes an unlawful search or arrest, the civil courts are open to the person wronged. If the person is found to be guilty of a crime, he should answer for his crime regardless of the wrong of the officer.

In no class of cases except those involving unreasonable searches and seizures has it been held to be a complete defense to a crime that a ministerial officer proceeded in a wrongful manner to apprehend the accused.

*Mahon* v. *Justice*, 128 U. S., 700, presents a case of a defendant who had been kidnapped in one state while extradition proceedings were pending for his surrender, and forcibly taken to another state, and who sought release on the ground of his unlawful arrest, which of course was denied, as the court could find no reason for releasing a man from prosecution merely because his personal rights had been violated in the manner of his arrest. The Court say:

"A, being indicted in Kentucky for felony, escaped to West Virginia. While the Governor of West Virginia was considering an application from the Governor of Kentucky for his surrender as a fugitive from justice, he was forcibly abducted to Kentucky, and when there was arrested by the Kentucky authorities under legal process, and put in jail, and held to answer the indictment. *Held,* that he was not entitled to be discharged from custody under writ of habeas corpus from the Circuit Court of the United States."

In the opinion of the court it is said by Mr. Justice Field, page 706:

"It is true also that the accused had the *right* while in West Virginia, to insist that he should not be surrendered to the Governor of Kentucky by the Governor of West Virginia except in pursuance of the Acts of Congress, and that he was entitled to release from any arrest in that state not made in accordance with them; but having been subsequently arrested in Kentucky under the writs issued on the indictments against him, the question is not as to the validity of the proceedings in West Virginia, but as to the legality of his detention in Kentucky."

Applying the principle of that case to the instant case,

even assuming that the officer was not *absolutely* justified in searching, yet the accused was subsequently charged by affidavit issued in a proper form, upon which he was tried, and the principle involved in the two cases is the same.

In *Ker* v. *Illinois*, 119 U. S., 436 it was held:

"\* \* \* Where a prisoner has been kidnapped in a foreign country and brought by force, against his will within the jurisdiction of the state whose law he has violated, with no reference to an extradition treaty though one existed, and no proceeding or attempt to proceed under any treaty, this court can give no relief, for these facts do not establish any right under the Constitution, or laws or treaties of the United States."

*Lascelles* v. *Georgia*, 148 U. S., 537 is a case in which a fugitive from justice was surrendered upon a specific charge by one state of the Union to another. Upon being taken to the demanding state he was placed upon trial on other charges than those named in the warrant of extradition. Though he were surrendered on a specific warrant charging a specific offense, the right to try him upon any offense for which he might be arrested while in the demanding state was maintained.

"A fugitive from justice who has been surrendered by one state of the Union to another state upon requisition charging him with the commission of a specific crime, has under the Constitution and laws of the United States, no right, privilege or immunity to be exempt from indictment and trial in the state to which he is returned, for another or different offense than that designated in the requisition, without first having an opportunity to return to the state from which he was extradited."

The simple proposition is that being within a state, after his extradition from another state, he may be prosecuted for any offense which is charged against him. In that case the case of *Mahon* v. *Justice, supra,* was referred to in a very long discussion. The court on page 545 of the opinion say:

"If a fugitive may be kidnapped or *unlawfully abducted* from the state or country of refuge, and be thereafter tried in the state to which he is forcibly carried, without

violating any right or immunity secured to him by the Constitution and laws of the United States, it is difficult to understand upon what sound principle can be rested the denial of a state's authority or jurisdiction to try him for another or different offense than that for which he was surrendered."

A different rule on extradition matters applies in cases of foreign extradition, for the reason that there it is a matter of good faith between the demanding and the surrendering sovereignties that the accused shall be tried for the offense named in the warrant of extradition and for none other. *United States* v. *Rauscher,* 119 U. S., 407; *State* v. *Vanderpool,* 39 O. S., 273.

In *Horton* v. *State,* 85 O. S., 13, the Supreme Court of Ohio, following many other courts of the country, hold that the principle contended for, of cancellation of one wrong by another does not apply.

"2. It is no defense to an indictment for obtaining money by false pretenses, that the transaction in which the money was obtained was unlawful."

In the opinion by Judge Johnson, there is an exhaustive discussion of the problem involved, which was concurred in by all of the judges except Judge Davis. That principle however has found firm lodgment in the criminal law of the country, and would seem to be ineradicable except by legislation enactment.

The problem in this case however, is to determine the effect of the recent decisions of the court of Appeals of Hamilton county, in *Bock* v. *City* and *Tapp* v. *City,* 35 O.L.R., 25 which seem to be entirely in conflict with the Rasonsky and Sabo cases, but which have the approval of the Supreme Court of Ohio, in that that court refused a motion to certify the records in those cases, and refused rehearings, thus giving them full force and effect as the law of the state. That court also dismissed petitions in error on the ground there was no debatable Constitutional question involved.

The Bock and Tapp cases were prosecutions by the city of Cincinnati for the unlawful possession of race horse

slips in violation of the ordinances of the city. The Court of Appeals, speaking of the facts of the case say:

"The fact that in the Tapp case slips were actually found in his possession, *is conclusive* that he was violating the city ordinances, and we are asked to reverse the conviction because it is claimed that he was *arrested unlawfully*.

"In the Bock case it is claimed the search was without warrant or even reasonable ground to believe a crime was being committed, was unlawful, and that hence his subsequent arrest and conviction were contrary to law, and the slips improperly admitted, especially as the evidence identifying the slips as possessed by Bock was scanty and criticized by the trial court." (See p. 27)

The court, further discussing the facts in those cases, say:

"In neither case was there any evidence that the officer making the arrest had probable cause or reasonable ground to believe that the defendants were violating the city ordinances. On the contrary, the testimony of the officers negatives this." (p. 27)

In the decision referred to, the Court of Appeals at no place refers to the Rosansky or Sabo cases. Its findings are based exclusively on Federal decisions.

It is of interest to note that in the Bock case it was in the *place of business* of the defendant that the race horse slip was found, and there was proof that Bock was conducting the place of business, and there was no proof of any one else being present at the time, yet the decision of the Court of Appeals is that Bock could not be prosecuted because he was not legally arrested, although there was evidence that he was then and there committing the offense by having in his possession the race horse slips. Applying the principles of the Rosansky and Sabo cases to the Bock case, the evidence obtained in his place of business, though the search was unlawful, was admissible, yet the judgment of conviction was reversed and this judgment of reversal is approved by the action of the Supreme Court.

In the Tapp and Bock cases the Rosansky and Sabo

cases were called to the attention of the Supreme Court.

There is no question but that the race horse slips referred to were contraband. They had no legality. They were not property. There were no circumstances under which one had a right to possess them. In the Tapp case there is no question that he did have them in his possession. In the Bock case the Municipal Court found that he had them in his possession and the Court of Appeals did not pass on the question of the weight of the evidence adversely to the finding of the Municipal Court.

The only point of the court's decision relieving these men from responsibility for these acts was that the *officers committed an illegal act,* as emphasis is laid upon the fact in the Tapp case the arrest was *unlawful.* If the decision in the Tapp case is the law, then if an officer finds one on the highway with a deadly weapon concealed in his possession, and by accident and without previous information finds the weapon in his possession, the officer, if he makes an arrest is doing a futile thing, because it is the duty of the courts to discharge the accused and to return the weapon to him. The same would be the case of possession of burglers' tools. If one were found upon the highway by an officer, who without previous knowledge, merely detained the man and found that he was in possession of burglars' tools, he would have no right to arrest without procuring a warrant, and if he did so the courts would have to find that the officer was wrong, that the defendant was not subject to prosecution, and would have a right to demand the return of his tools. The race horse slips, the burglars' tools, the deadly weapon unlawfully carried, are each contraband. The unlawful search or arrest of an innocent person would give him a right of action. Less mischief will result from the occasional arrest of an innocent person than the release of actual criminals, because the officers proceed without previous information of the commission of a crime.

In those cases the Constitution should not become "first aid" to law violators.

The rights of the public in the enforcement of the laws

should prevail over the conduct of those who consciously violate the law. The unlawful act of arrest should not be confused with the criminal act.

*Porello* v. *State*, 121 O. S., 280, was a prosecution for carrying concealed weapons. The report of the facts is by Allen, J., on p. 282 as follows:

"Porello was arrested on November 12, 1927, at approximately three o'clock A. M., near the corner of East 55th Street and Woodland Avenue, Cleveland. When first seen by the officers he was coming out of a restaurant accompanied by two other men. He was approaching an automobile parked on the east side of east 55th Street near Woodland, when the officers searched Porello and found no weapon. The automobile was then searched and a 32 calibre loaded revolver was found in the pocket of the left front seat next the driver's seat. Porello was then placed under arrest on a charge of carrying concealed weapons."

There was an admission that the car belonged to Porello. Those are the facts upon which Porello was convicted, though he made an application for the return of the revolver and its suppression as evidence, and also a motion for a verdict of not guilty.

The record does not disclose an iota of evidence that the officers had any suspicion or reason for suspicion. There is nothing to indicate any impropriety on Porello's part. On p. 284 Judge Allen says:

"While there was nothing in Porello's action in coming out of the restaurant to indicate that he was engaged in any illegal enterprise, an arrest made without warrant, even though the officer had no previous personal knowledge of the fact that the person arrested was committing a felony, is not unjustified."

And then the court goes on to indulge in some generalities about reasonable belief on the part of the officer which justified the arrest.

The court lays down the rule in that case applicable to such cases, as follows:

"A police officer of a municipality is authorized without a warrant to arrest a person found on the public streets

of the corporation carrying concealed weapons in violation of Section 12819 of the General Code, although such police officer has no previous personal knowledge of the fact, if he acts *bona fide* and upon such information as induces an honest belief that the person arrested is in the act of violating the law."

The statutes of Ohio fix the authority of police officers to arrest in the following sections:

"Section 13432-1. A sheriff, deputy sheriff, constable, marshal, deputy marshal, watchman or police officer, herein designated as 'peace officers' shall arrest and detain a person found violating a law of this state or an ordinance of a city or village, until a warrant can be obtained."

"Section 13432-2. When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person, without a warrant, may arrest another person whom he has reasonable cause to believe is guilty of the offense, and detain him until a legal warrant can be obtained."

Under the first section above referred to the officer "shall arrest and detain a person found violating a law of this state or an ordinance of a city or village." It may be presumed that the Legislature intended what it said, and it is the duty of an officer to arrest a person found violating a law of the state or an ordinance of a municipal corporation, in which case the duty is fixed by the Legislature and not by the court.

The Court of Appeals in the syllabus of the decisions in the Bock and Tapp cases lays down the law as follows:

"1. A police officer acting without a warrant has no authority to arrest and search a person unless he has probable cause and reasonable grounds to suspect that the person searched is violating the law *before* he makes the arrest or search.

"2. Evidence of violation of a law that is obtained by an illegal search of the person is inadmissible, and a conviction based on such evidence cannot be sustained notwithstanding a strong probability that the defendant was guilty.

\* \* \* \* \* \*

"6. Convictions of defendants on a charge of possessing race horse slips reversed for failure of evidence to show that police officers, before arrest and search had reason-

able grounds to believe that the persons apprehended were violating the law."

Considering the decisions of the Supreme Court in the Rosansky, Sabo and Nagle cases, *supra,* and the approval of the decision in the Tapp and Bock cases, there are extant two contradictory rules applying to the same situation in the state of Ohio. In the Rosansky and Sabo cases, contraband may be used under any circumstances, *no mater how obtained.* In the Tapp and Bock cases, contraband may not be used in evidence unless seized in a lawful manner.

It must be inferred that where the same court has adopted two distinct and contrary rules on the same subject, that the last one must prevail, and in the situation now presented upon this subject, the latest expression of the Supreme Court is that contraband may not be used as evidence unless obtained in a strictly legal manner.

There is no reason, nor any so-called "rule of reason" that can justify a holding that if a man's house is broken into by police officers and liquor found there, which he unlawfully possesses, that he may be convicted upon the proof of possession of the evidence, while at the same time if a man is stopped on the street without a warrant or authority, and is found to possess race horse slips or burglars' tools, he may not be convicted, and such evidence may not be used against him.

Take two liquor cases: Under the Rosansky case, if the property is taken from a man's house after an unlawful breaking in by an officer without previous information, he may be convicted—but if the same man were caught on the street transporting liquor, and the officer did not have reasonable ground in advance to know that he was transporting liquor, the man if arrested could not be convicted, and is entitled to have his property returned to him.

There should be one rule on this subject applicable to contraband, whether a man happens to be found with the contraband liquor, deadly weapons, or burglars' tools, on the street or in his house, and a harsher rule should not apply against a man who has possession of contraband in his house than one who is carrying it about the street

in a way that could have serious, if not deadly consequences.

In the Municipal Court in this case, the trial judge stated that he would have dismissed the defendant but for the decision in the Rosansky case.

It must be kept in mind that the Constitutional rights of an individual as to his person, and those as to his house, are expressed in the same clause of the Constitution, and there is no greater sanctity to one than the other. For ten or eleven years persons have been prosecuted and punished under the principles of the Rosansky case. If that case and the Sabo case were wrongfully decided, that should be clearly stated. That the decisions in those cases should be enforced as to violations of the law, and a different rule enforced in practically the same situation as to other cases, is not possible, and this court, adopting the decisions in the Tapp and Bock cases as the latest expression on this subject, has no course but to reverse the judgment of the Municipal Court, and to remand the case for further proceedings according to law.