[No. 26415. *En Banc*. December 11, 1936.]

*In the Matter of the Application of* ROY E. RINGROSE *for a Writ of Habeas Corpus.*[1]

*Henry, Henry & Pierce,* for appellant.

*Warren G. Magnuson* and *John M. Schermer* (*Harry Bowen,* of counsel), for respondent.

GERAGHTY, J.—This is an appeal by Roy E. Ringrose from an order of the superior court dismissing his petition for a writ of habeas corpus.

The essential facts, stipulated in the superior court, follow: Appellant was charged by complaint, before a justice of the peace in King county, with the crime of grand larceny, and a warrant for his arrest was issued. The appellant could not be found in the state, and, upon information that he was then in the state of New Mexico, the prosecuting attorney of King county instituted extradition proceedings for his return to the state of Washington as a fugitive from justice. The

[1] Reported in 62 P. (2d) 1104.

478

governor of New Mexico honored the requisition, and the appellant was returned to the state of Washington in custody of its extradition agent.

After appellant's rendition, the prosecuting attorney filed an information charging him with the crime of grand larceny. The transactions upon which the information was based were not those charged in the complaint before the justice of the peace and upon which rendition was had, but other and distinct offenses. The appellant was tried and convicted upon the information and sentenced to a term of years in the state penitentiary at Walla Walla, where he had been confined for about four years at the time of his application for the writ.

The appellant bases his petition for habeas corpus upon the ground that it was unlawful to try him for an offense other than that charged in the extradition proceedings without first allowing him an opportunity to return to the state from which he had been surrendered. In support of his position, appellant cites several cases, the first, quoted at length, being *State v. Hall*, 40 Kan. 338, 19 Pac. 918, 10 Am. St. 200. This case is illustrative of the view formerly held by some of the state courts with respect to extradition, best expressed in an often quoted dictum of Judge Cooley:

"To obtain the surrender of a man on one charge and then put him upon trial on another, is a gross abuse of the constitutional compact. We believe it to be a violation also of legal principles. It is a general rule, that where by compulsion of law a man is brought within the jurisdiction for one purpose, his presence shall not be taken advantage of to subject him to legal demands or legal restraints for another purpose. The legal privileges from arrest when one is in the performance of a legal duty away from his home rest upon this rule, and they are merely the expressions of reasonable exemption from unfair advantages. The rea-

son of the rule applies to these cases; and it should be held, as it recently has been in Kentucky, that the fugitive surrendered on one charge is exempt from prosecution on any other. He is within the state by compulsion of law upon a single accusation. He has a right to have that disposed of, and then to depart in peace.'' Princeton Review, January, 1879, quoted in Spear on the Law of Extradition (3rd ed.), p. 527.

The earlier cases announcing this rule attached importance to a supposed analogy between interstate rendition and international extradition, and assumed that the right of asylum, recognized in international relations, obtained between the several states.

The case of *Lascelles v. Georgia,* 148 U. S. 537, 13 S. Ct. 687, definitely established the doctrine that a fugitive from justice who has been surrendered by one state of the Union to another state, upon requisition charging him with the commission of a specific crime, has, under the constitution and laws of the United States,

''. · .  . no right, privilege or immunity to be exempt from indictment and trial, in the State to which he is returned, for any other or different offence from that designated in the requisition, without first having an opportunity to return to the State from which he was extradited.'' (syllabus)

Citing the applicable provisions of the Federal constitution and statutes relating to interstate rendition, the court continues:

''Upon these provisions of the organic and statutory law of the United States rest exclusively the right of one State to demand, and the obligation of the other State upon which the demand is made to surrender, a fugitive from justice. Now, the proposition advanced on behalf of the plaintiff in error in support of the federal right claimed to have been denied him is, that, inasmuch as interstate rendition can only be effected when the person demanded as a fugitive from justice is duly charged with some particular offence, or of-

fences, his surrender upon such demand carries with it the implied condition that he is to be tried *alone* for the designated crime, and that in respect to all offences other than those specified in the demand for his surrender, he has the same right of exemption as a fugitive from justice extradited from a foreign nation. This proposition assumes, as is broadly claimed, that the States of the Union are independent governments, having the full prerogatives and powers of nations, except what have been conferred upon the general government, and not only have the right to grant, but do, in fact, afford to all persons within their boundaries an asylum as broad and secure as that which independent nations extend over their citizens and inhabitants. Having reached, upon this assumption or by this process of reasoning, the conclusion that the same rule should be recognized and applied in interstate rendition as in foreign extradition of fugitives from justice, the decision of this court in *United States v. Rauscher,* 119 U. S. 407 *et seq.,* is invoked as a controlling authority on the question under consideration. If the premises on which this argument is based were sound, the conclusion might be correct. But the fallacy of the argument lies in the assumption that the States of the Union occupy towards each other, in respect to fugitives from justice, the relation of foreign nations, in the same sense in which the general government stands towards independent sovereignties on that subject; and in the further assumption that a fugitive from justice acquires in the State to which he may flee some state or personal right of protection, improperly called a right of asylum, which secures to him exemption from trial and punishment for a crime committed in another State, unless such crime is made the special object or ground of his rendition. This latter position is only a restatement, in another form, of the question presented for our determination. The sole object of the provision of the Constitution and the act of Congress to carry it into effect is to secure the surrender of persons accused of crime, who have fled from the justice of a State, whose laws they are charged with violating. Neither the Constitution, nor the act of Congress providing for the rendition of fugitives

upon proper requisition being made, confers, either expressly or by implication, any right or privilege upon such fugitives under and by virtue of which they can assert, in the State to which they are returned, exemption from trial for any criminal act done therein. No purpose or intention is manifested to afford them any immunity or protection from trial and punishment for any offences committed in the State from which they flee.''

After quoting from *Mahon v. Justice,* 127 U. S. 700, 8 S. Ct. 1204, to the effect that the removal from a state of a fugitive from justice in a way other than that provided by the appropriate sections of the constitution and statutes in relation to interstate rendition, cannot affect his detention upon a warrant for the commission of a crime within the state to which he was carried, since the jurisdiction of the court in which the indictment was found is not impaired by the manner in which the accused is brought before it, the court continues:

''If a fugitive may be kidnapped or unlawfully abducted from the State or country of refuge, and be, thereafter, tried in the State to which he is forcibly carried, without violating any right or immunity secured to him by the Constitution and laws of the United States, it is difficult to understand upon what sound principle can be rested the denial of a State's authority or jurisdiction to try him for another or different offence than that for which he was surrendered. *If the fugitive be regarded as not lawfully within the limits of the State in respect to any other crime than the one on which his surrender was effected, still that fact does not defeat the jurisdiction of its courts to try him for other offences, any more than if he had been brought within such jurisdiction forcibly and without any legal process whatever.*'' (Italics ours.)

Concluding its opinion, the court says:

''But aside from this, it would be a useless and idle procedure to require the State having custody of the

alleged criminal to return him to the State by which he was rendered up in order to go through the formality of again demanding his extradition for the new or additional offences on which it desired to prosecute him.''

The opinion of the supreme court of Georgia, reviewed and approved in the *Lascelles* case, was written by Justice Lumpkin. In reviewing the difference between international extradition and interstate rendition, Justice Lumpkin calls attention to the fact that, while a foreign government has some measure of discretion in determining whether or not it will surrender a fugitive to the demanding government, in interstate rendition it is the imperative duty of the executive of a state, under the supreme law of the land, to surrender a fugitive upon proper requisition, even though there may be no power on the part of the Federal government or the demanding state to compel compliance with this duty. Commenting upon this difference, Justice Lumpkin continues:

''If, therefore, the demand cannot, as a matter of right, be refused when made in compliance with the Federal requirements, it would be idle for the authorities of the State to whom the accused was surrendered to set him at large so that another demand might be made, before trying for an offense other than that charged in the requisition upon which he was surrendered. Certainly they are under no obligation, before trying him for other violations of law, to place the executive of the surrendering State in a position to do or refuse to do that which, under the supreme law of the land, it is his imperative duty to do. If what we have said is true, considerations of comity and good faith on the part of the State to which the surrender was made are not involved in the matter.'' *Lascelles v. State,* 90 Ga. 347, 366, 16 S. E. 945, 35 Am. St. 216.

Appellant contends that the case of *Lascelles v. Georgia,* 148 U. S. 537, 13 S. Ct. 687, *supra,* is controlling as a precedent only in so far as it holds that ap-

pellant is deprived of no right under the Federal constitution. But, the due process provisions of the fifth and fourteenth amendments to the constitution of the United States are as broad as those of our own state constitution; and it will be seen by reference to Judge Cooley's language that the claimed right of immunity was predicated principally on the supposed authority of the "constitutional compact." Appellant has cited us to no provision of our constitution or statutes which specifically guarantees to him the immunity claimed. He relies, rather, on broad and abstract principles of law, deducible from the decisions of state courts. Certainly, as to such principles, there can be no higher authority than the supreme court of the United States. That the case has been accepted as controlling, is evidenced by the trend of judicial opinion since its rendition, as illustrated in *In re Flack,* 88 Kan. 616, 129 Pac. 541, Ann. Cas. 1914B, 789, 47 L. R. A. (N. S.) 807, where the supreme court of Kansas, on its authority, overruled *State v. Hall, supra.* In Nebraska and Ohio, early cases from which are cited by appellant, later opinions have the same trend. *Ex parte Moeller,* 14 Ohio App. 300; *State ex rel. Petry v. Leidigh,* 47 Neb. 126, 66 N. W. 308.

The present rule on the question is stated in 25 C. J. 272, as follows:

"Although there has long been a conflict in the decisions of courts of the several states, it is now generally accepted that a fugitive from justice, surrendered by one state upon the demand of another, is not protected from prosecution for offenses other than that for which he was surrendered, but may be tried for any crimes committed in the demanding state either before or after extradition without having been given an opportunity to leave the state."

■ Although what we have already said disposes of the case, it may not be out of place to note that,

484

while the state has not raised the question, it is apparent on the face of the record, as it comes before us, that appellant's petition for a writ of habeas corpus was properly denied by the court. It nowhere appears in the record that appellant challenged, by motion, plea in abatement, or otherwise, the right of the state to try him upon the information returned after his rendition. As will be seen by reference to *Mahon v. Justice* and *Lascelles v. Georgia, supra,* the state court, under the rule universally accepted, had jurisdiction over his person. If immunity from prosecution existed, it was a privilege to be appropriately claimed, and was waived by his failure to assert it.

The judgment is affirmed.

ALL CONCUR.